STONE, J.
We reverse the July 1, 2003 written order holding Michael Glick, the former husband, in contempt of court. Although the written order is based on a May 30, 2003 hearing, it fails to reflect the court’s oral pronouncements at that hearing.
During the Glicks’ divorce, the trial court entered an agreed order awarding the former husband exclusive use of the parties’ condominium and ordering the former husband to pay certain expenses including the electric bill. Subsequently, the trial court ordered the condominium sold, and the former husband vacated the condominium. The anticipated sale, however, was not completed.
Thereafter, the former wife filed an emergency motion for contempt. At a May 15, 2003 hearing, the trial court found as follows:
I’ll find Mr. Glick in contempt of court. I find that he had received disbursements, some of which was for the sole purpose of keeping the condominium operational for the purpose of selling it.
I find that keeping the electricity on in an empty condominium is an absolute minimal expense, and in light of the disbursements he’s received, he’s willfully refused to maintain the electric.
[[Image here]]
I’ll impose a period of incarceration of 30 days. I’ll suspend the imposition of that incarceration until May 30th at 8:00 a.m. I’ll set this matter for the defendant to surrender himself to the custody of the Palm Beach County Sheriffs Office here in this courtroom May 30th 8:00 a.m. And at that time, I’ll verify if the electricity and the condo has otherwise been put into a salable condition.
Thereafter, the judge asked whether the former wife’s attorney could draft a proposed order, and the following exchange took place:
MS. MYATT [FORMER WIFE’S COUNSEL]: Yes, I will, Judge. Can I just ask for one clarification?
THE COURT: Yes.
MS. MYATT: Just so that there’s no dispute about “salable condition”, I understand you are keeping the electricity on. What about insurance on the place? I’m concerned that someone will get hurt on the premises and sue these folks and they will lose the condo for that.
THE COURT: The reason for my imposition of contempt is the only credible evidence is with regard to the electricity.... [Everything else was hearsay with regard to the other matters. So at that time, I’m going to look specifically toward the insurance. But if the place is not other ways [sic] in salable condition, I’ll leave that to another motion for contempt.
A written order was entered on May 23, 2003, which recited the court’s ruling finding the former husband in contempt for failing to keep the electricity on in the vacant condominium.
*1240 At a subsequent hearing held on May 30, 2003, the former wife offered testimony that, because there was no insurance on the marital condo, the realtor could not show the property. After the trial court confirmed that the electricity had been restored in the condo, the following took place:
COURT:.... The order with regard to contempt says that the property shall be — that Mr. Glick is in contempt for failing to maintain the property in a salable condition, to wit, specifically the electricity had been turned off. Is the electricity on?
MR. GLICK: Yes, sir, and notice was filed with the Court on the 16th.
MR. MYATT: It is, Your Honor.
THE COURT: Okay. I also find that having the thing — having the condo insured is an essential component of getting it sold. However, based upon what I’ve heard, I don’t think it affects in technical sense with the necessary specificity of my order — it’s still salable but not really. And so before I stick you in jail, Mr. Glick, the rules require me to give you specific notice as to what you have to do. I think that you have complied with the letter of the order but not exactly the spirit of the order, so I’m going to — I’m going to find that you satisfied the letter of this order, so there’s no contempt and I’ll set aside that matter. However, I’m not going to let you off the hook. I’m going to order that the parties now insure the property, specifically Mr. Glick pay for the cost of insuring the property and complete anything else required of Coldwell Banker or the realtor, whoever it might be right now its Coldwell, so that the property can be shown and the property could be marketed and properly could be marketed and the property could be sold.
* * *
THE COURT:.... I’m going to reset this matter for one week from today. I’m ordering you to insure the property to Coldwell’s satisfaction. [The Coldwell realtor] said minimal amount of insurance, I don’t know what that means, but I’m giving you a week to get it taken care of. If it’s not taken care of....
Toward the end of the hearing, the following exchange took place:
THE COURT:....[W]hat I’m doing today is on the strength of the ... May 23rd order, I don’t think that — I don’t think that there’s enough specificity [in] this order to have adequately put you on notice to hold you in contempt. So I am not holding you — I am not — I am setting aside the requirement that you go to jail, as I previously indicated on that order. I will be entering an order shortly with regard to requiring you to come into compliance with the insurance requirement of Coldwell Banker and to do what else is necessary to make the property — to get it on the market and for them, Coldwell, to be able to comply with the contract that you’ve entered into with them. Miss Myatt, if you’ll prepare an order for me?
[[Image here]]
MS. MYATT: Can we just specify that the way it will be taken care of is that Mr. Glick provides me proof of insurance?
THE COURT: Correct.
The written order on the May 30th hearing was entered on July 1, 2003. That order, contrary to the court’s oral ruling, found the former husband in contempt for failing to keep the condo insured.
The written order also stated:
4. Husband is hereby sentenced to incarceration in the Palm Beach County *1241 jail for a period of thirty (30) days. This is suspended until June 6, 2003 at 8 a.m. Husband shall appear at that time to surrender to the Palm Beach Sheriffs Office.
As a purge, the former husband could pay for and secure insurance for the condo.
Although it appears that there may have been an intervening hearing on June 6, 2003, no transcript or order arising out of that hearing appears in the record.
A trial court’s oral pronouncement must control over a later written order. E.g. Byrd v. State, 853 So.2d 1103, 1105 (Fla. 4th DCA 2003). The written July 1st order does not accurately reflect the May 30th record.
At the May 30th hearing, the trial court made several oral pronouncements which are not reflected in the July 1, 2003 order, including: (1) vacating its threat of incarceration in the May 23, 2003 order, and (2) finding no contempt concerning the need for the condo to be insured, where there was no specific underlying order to do so.
In order for the trial court to find the former husband in contempt, the former wife was required to show that a prior court order directed the former husband to perform and that he failed to comply with the order. See generally Bowen v. Bowen, 471 So.2d 1274, 1280 (Fla.1985)(holding the movant must show that a prior court order directed the party to pay the support or alimony and that the party in default has failed to make the ordered payments).[1]
Additionally, Florida Rule of Family Law Rule of Procedure 12.615(d)(1) requires the court to enter an order containing a recital of facts finding the alleged contemnor to be in contempt, that a prior order was entered, that the contemnor failed to comply with the order, that the contemnor had the present ability to comply, and that the contemnor willfully failed to comply with the prior court order. See generally Cleveland v. Cleveland, 841 So.2d 648, 650 (Fla. 4th DCA 2003).
Therefore, we reverse the July 1, 2003 contempt order and remand for further proceedings.
The former husband also seeks relief as to a May 23, 2003 order. As to that order, we vacate our earlier order of dismissal and affirm the trial court order denying rehearing.
STEVENSON and HAZOURI, JJ., concur.

. We note that we do not address any question as to whether contempt is an available remedy to enforce the former husband’s failures to act to facilitate the sale, as this issue has not been raised on appeal. See Register v. Register, 617 So.2d 820, 821 (Fla. 1st DCA 1993)(holding that former husband could not be jailed for contempt for the failure to make timely payments, pursuant to a stipulation and property settlement agreement); Rnorr v. Knorr, 751 So.2d 64, 66 (Fla. 2d DCA 1999)(holding that former husband could not be threatened with incarceration for contempt of court for failure to pay nursing home and housekeeping bills). See also Schminkey v. Schminkey, 400 So.2d 121, 122 (Fla. 4th DCA 1981)(holding that requirement to repay loan was not alimony and may not be enforced through contempt since our constitution prohibits imprisonment for debt.)