DAMOORGIAN, C.J.
Elizabeth Wilcoxon (“Former Wife”) appeals the trial court’s post-dissolution order holding her in contempt, modifying a time-sharing agreement, and awarding attorney’s fees in favor of her Former Husband, Martin Moller. We affirm in part and reverse in part.
Former Husband and Former Wife were married in 1998 and divorced in January of 2009. Their marriage produced two minor children. In conjunction with the dissolution of their marriage, the par *284 ties entered into a Marital Settlement Agreement (“MSA”). The MSA incorporated a Time-Sharing Agreement (“TSA”) in which the parties agreed to 50/50 time-sharing. The parties also agreed that either parent could enroll the children in extracurricular activities “so long as it does not interfere with the other parent’s time-sharing provided herein, unless mutually agreed to in writing or permitted by Court order.” The TSA also provided that whichever parent was with the children was responsible for transporting the children to their extracurricular activities. Former Husband and Former Wife later entered into an addendum to the MSA where they agreed to communicate regarding co-parenting responsibilities “utilizing Our Family Wizard[1] or SMS text absent an emergency.”
In regard to healthcare, the MSA required Former Husband to maintain the children’s hospital and medical insurance policies and Former Wife to maintain their dental and vision insurance policies. The parties agreed to share the costs of health coverage for the children equally. Additionally, the MSA provided for prevailing party fees in the event that either party had to seek court enforcement.

Former Husband’s First Motion for Contempt

More than two years after their divorce was finalized, Former Husband filed an “Expedited Motion to Enforce, for Contempt, and For Sanctions and Request for Special Set Hearing.” By that time, Former Wife was remarried and the children were insured at no additional cost under her new husband’s employer-offered plan. In his motion, Former Husband asserted that Former Wife was “willfully and maliciously” non-compliant with the MSA in that she: 1) “abjectly refused to provide the Former Husband with vital health-related and health insurance-related information for the children” such as their health insurance cards; 2) terminated her subscription to Our Family Wizard; 3) failed to discuss and give reasonable consent for the children’s extracurricular activities; and 4) allowed her current husband to “badmouth” Former Husband in front of the children.
A general magistrate heard Former Husband’s motion on September 16, 2011. Based on the arguments and testimony presented, the magistrate found that: 1) Former Wife failed to maintain her subscription to Our Family Wizard; 2) Former Wife failed to provide Former Husband with insurance cards for the children; and 3) it was not in the best interest of the children to have Former Wife’s current husband near Former Husband. Based on these findings, the magistrate recommended the following:
• “Former Wife shall have five (5) days from September 16, 2011 (September 22, 2011) to re-subscribe to OFW, and that the parties shall use this resource frequently and shall provide responses within 48 hours to all communications.”
• “The Former Wife shall have five (5) days from September 16, 2011 to provide Former Husband with insurance cards, provider book, and any other necessary information incident to the children’s health and medical insurance.”
• “The Former Wife’s current husband shall not be present anywhere that the Former Husband is, particularly in the presence of the children. In the event *285 that there are events or activities of any sort involving the minor children, if the Former Husband is in attendance, the Former Wife’s current husband shall not be.”
Despite the September 22, 2011 deadline for compliance imposed in the recommendation, the magistrate did not actually file her report and recommendation until October 18, 2011, and the court did not ratify it until November 15, 2011.

Former Husband’s Second Motion for Contempt

On April 17, 2012, Former Husband filed “Former Husband’s Motion to Enforce, for Contempt, and for Sanctions.” In this motion, Former Husband alleged that Former Wife ignored and violated the directives set forth in the court’s November 15, 2011 order ratifying the magistrate’s recommendations in the following manners: 1) Former Wife did not re-subscribe to Our Family Wizard on or before September 22, 2011; 2) Former Wife did not provide Former Husband with the children’s health insurance identification cards until thirty-five days after the policy initiation; 3) Former Wife failed to prohibit her current husband from attending an event at the children’s school which Former Husband also attended; 4) Former Wife “failed to allow the children to participate in several extracurricular and school related activities”; and 5) Former Wife failed to pay Former Husband her share of the children’s health expenses. Based on this alleged behavior, Former Husband requested that the court hold Former Wife in contempt and impose “sanctions for her contempt.” As a sanction for contempt, Former Husband requested that “Former Wife’s time-sharing be changed so that the minor children exercise time-sharing with Former Husband every Wednesday and Thursday overnight in order to ensure that the children attend all extracurricular activities and school related functions” as well as “all attorney’s fees and costs incurred to prepare and prosecute this motion.”
The court heard Former Husband’s second motion on August 3 and August 6, 2012. Former Husband testified that Former Wife refused to bring the children to certain extracurricular activities during her visitation time. With respect to Former Wife’s current husband, Former Husband testified that the current husband attended two of the children’s school events in violation of the court’s order. Relating to health insurance, Former Husband testified that he was required to maintain the children’s insurance through his employer under the MSA, but admitted that he was not able to do so “a couple years back” so Former Wife added the children to her current husband’s employer’s policy. Former Husband did not financially contribute to the costs of insurance through Former Wife’s current husband. Former Husband testified that he recently had the opportunity to add the children back to his work policy, and asked the court to order Former Wife to pay half of the premium policies pursuant to the MSA.
Former Wife admitted that her current husband attended an event which Former Husband also attended, but maintained that she did not ask or encourage her current husband to attend. She made it clear to her current husband that he was not supposed to be anywhere near Former Husband, but explained: “There is no restraining order, all I can say is, [...] you are not supposed to be there ... How am I supposed to inhibit somebody from showing up?” She also testified that the extracurricular events missed by her children during her time-sharing were per their requests. She maintained that she never let dental and vision insurance for the *286 children lapse. As far as her Our Family-Wizard use, Former Wife testified that she used it from 2009 until 2011 when her subscription lapsed because it was too expensive for her to maintain. She re-subscribed after the court ordered her to and after a family member gave her money for her subscription.

The Court’s Order

Following the hearing, the court entered an order finding Former Wife in contempt for failing to re-subscribe to Our Family Wizard before September 22, 2011 and for “permitting her current husband to be in the general area of the Former Husband while at the minor children’s activities.” The court also found Former Wife in violation of the MSA “for having not used her best efforts to transport the children to their extracurricular activities.” As a sanction, the court modified the TSA by switching the days the parents had with the children, ordered Former Wife to cancel the children’s health insurance policies through her current husband and pay Former Husband for health insurance, and awarded a money judgment in the amount of $10,442.50 to Former Husband for sanctions and attorney’s fees. A portion of the award, $4,657.50, covered fees and costs incurred by Former Husband related to Former Wife’s failure to attend her depositions. The order did not make any findings or conclusions regarding Former Wife’s ability to pay the sanctions and attorney’s fees.
We find numerous errors in the trial court’s order.

The Contempt Ruling

“A judgment of contempt comes to the appellate court clothed with a presumption of correctness and will not be overturned unless a clear showing is made that the trial court either abused its discretion or departed so substantially from the essential requirements of law as to have committed fundamental error.” DeMello v. Buckman, 914 So.2d 1090, 1093 (Fla. 4th DCA 2005). However, “‘[a] judge cannot base contempt upon noncompliance with something an order does not say.’ ” Id. (quoting Keitel v. Keitel, 716 So.2d 842, 845 (Fla. 4th DCA 1998)). Under such circumstances, the standard of review is de novo, not abuse of discretion. Id.
Generally, there are two types of contempt: civil and criminal. “[T]he purpose of a civil contempt proceeding is to obtain compliance on the part of a person subject to an order of the court.” Bowen v. Bowen, 471 So.2d 1274, 1277 (Fla.1985). Thus, a party who is held in civil contempt can “purge” the contempt by doing as instructed. Pugliese v. Pugliese, 347 So.2d 422, 424 (Fla.1977). Further, the purge instructions must actually be feasible for the contemnor. Bowen, 471 So.2d at 1277-78.
“The purpose of criminal contempt, on the other hand, is to punish .... Because this type of proceeding is punitive in nature, potential criminal con-temnors are entitled to the same constitutional due process protections afforded criminal defendants in more typical criminal proceedings.” Id. at 1277 (citations omitted). Criminal contempt can either be direct or indirect. Bank of N.Y. v. Moorings at Edgewater Condo. Ass’n, Inc., 79 So.3d 164, 166 (Fla. 2d DCA 2012). “Direct criminal contempt sanctions are imposed for conduct that takes place in the judge’s presence while indirect contempt sanctions are imposed for conduct that takes place outside the judge’s presence.” Id. at 167.
In either the civil or criminal contempt scenario, a person cannot be held in contempt for violating a court’s order if the order is not sufficiently explicit or *287 precise to put a party on notice of exactly what it must or must not do. Marcus v. Marcus, 902 So.2d 259, 262 (Fla. 4th DCA 2005). Further, a party cannot be held in contempt for non-compliance with a court order if the party did not have the ability to comply with the court order. Harris v. Hampton, 70 So.3d 747, 749 (Fla. 4th DCA 2011). Thus, before imposing contempt sanctions, a trial court must make an affirmative finding that the contemnor had the ability to comply with the court’s prior directive. Id.
The challenged order fails to state the nature of the contempt the trial court intended to impose. We hold that under either scenario, criminal or civil, the contempt order fails.
If the order is criminal in nature, then it must be for indirect criminal contempt since it was imposed for conduct which took place outside the judge’s presence. Bank of N.Y., 79 So.3d at 166. The trial court did not follow the necessary procedural safeguards prerequisite to entering an order of indirect criminal contempt. “An indirect criminal contempt proceeding must comply with the procedural requirements of Florida Rule of Criminal Procedure 3.840.” Baker v. Green, 732 So.2d 6, 7 (Fla. 4th DCA 1999). Rule 3.840(a) requires the court to issue an order to show cause supported by an affidavit or sworn testimony. Id. “Where there is no affidavit or sworn testimony to support the issuance of an order to show cause, the failure to comply with the rule is fundamental error and a contempt order arising out of that proceeding may not stand.” Id. Here, the court did not enter an order to show cause and there was no affidavit or sworn testimony submitted to the court with Former Husband’s motion for contempt. Thus, the court did not comply with Florida Rule of Criminal Procedure 3.840 as required to enter an order of indirect criminal contempt.
Additionally, if the contempt order is for civil contempt, it also fails for procedural reasons. First, the order does not contain a purge provision, i.e., a provision allowing Former Wife to get herself out of contempt. Lo v. Lo, 878 So.2d 424, 426 (Fla. 3d DCA 2004). Second, the court did not make any findings that Former Wife had the ability to comply with the court’s November 15, 2011 order. Harris, 70 So.3d at 749 (explaining that before holding a party in contempt for failure to comply with a court order, the trial court must make an express and affirmative finding that the party actually had the ability to comply with its previous directive).
Finally, whether criminal or civil in nature, the original order was not specific enough as to what Former Wife’s duties were in regard to her current husband. A court cannot base contempt upon noncompliance with something an order does not say, and we will not read implications into an order to justify contempt. Marcus, 902 So.2d at 260 (reversing order of contempt against mother for non-compliance with time-sharing plan when child refused to visit father and time-sharing plan did not provide mother with instructions on what to do when child would not cooperate). The court’s November 15, 2011 order merely instructed that “[t]he Former Wife’s current husband shall not be present anywhere that the Former Husband is.” It is problematic enough that the court sought to hold Former Wife accountable for the behavior of another adult with his own free will, but even more so that the court failed to instruct Former Wife as to her obligations should her current husband refuse to listen to her. Accordingly, the court erred by holding Former Wife in contempt based on her current husband’s conduct.

*288
Modification of the Parties’ Time-Sharing

We review the portion of the trial court’s order modifying the parties’ custody arrangement for an abuse of discretion. Ragle v. Ragle, 82 So.3d 109, 111 (Fla. 1st DCA 2011).
Since the court’s modification of the parties’ time-sharing schedule was a sanction for Former Wife’s non-compliance with the TSA, it follows that the sanction is only warranted if the evidence showed Former Wife did indeed fail to comply with the TSA. It did not. Although the TSA provides that the parent with the children is responsible for transporting the children to their extracurricular events, it also provides that neither parent can enroll the children in an extracurricular activity that would affect the other parent’s time-sharing without written consent from the other parent. The evidence established that Former Husband enrolled the children in extracurricular activities that overlapped with Former Wife’s time-sharing. However, there was no evidence that Former Husband ever obtained Former Wife’s written consent to enroll the children in these activities, thus triggering Former Wife’s transportation duties during her visitation time. Accordingly, the evidence did not establish that Former Wife violated the TSA.
This is not to say that the court was without the authority to modify the TSA absent a breach of the agreement. However, it could not do so absent a showing of “a substantial, material, and unanticipated change in circumstances and that the modification is in the best interest of the child.” § 61.13(3), Fla. Stat. (2012). The parties did not present any evidence establishing a substantial, material, and unanticipated change in circumstances, and thus the trial court erred in modifying the TSA.

Modification of the Parties’ Health Care Responsibilities Under the MSA

“The interpretation of the wording and meaning of the marital settlement agreement, as incorporated into the final judgment, is subject to de novo review.” Reilly v. Reilly, 94 So.3d 693, 696 (Fla. 4th DCA 2012) (quotations and citations omitted). “[A] court-approved marital settlement agreement is nothing more or less than a contract, and we will not rewrite terms that are clear and unambiguous.” Cole v. Cole, 95 So.3d 369, 371 (Fla. 3d DCA 2012).
Here, the MSA is unambiguous regarding the parties’ health insurance obligations: Former Husband agreed to maintain the hospital and medical insurance policies for the children and Former Wife agreed to maintain the dental and vision insurance policies for the children. Further, the parties agreed to “share equally in the cost of the foregoing insurance.” Despite the clear and unambiguous language of the MSA, the court ordered Former Husband to maintain the vision and dental insurance for the children. This was error as it was in direct conflict with the express terms of the Agreement. Further, there was no evidence establishing a change of circumstances supporting the court’s modification of the parties’ healthcare duties.

Attorney’s Fees Award

The trial court awarded Former Husband attorney’s fees as a sanction for Former Wife’s contempt, as the prevailing party to enforce the MSA, and as a sanction for Former Wife’s failure to appear at a deposition. As discussed above, we hold that the court erred when it found Former Wife in contempt and in violation of the MSA. Thus, its attorney’s fee award on these grounds must be reversed.
With regard to Former Husband’s fees for Former Wife’s failure to attend *289 her deposition, the fee award was based on a previous order issued by the trial court in which the court found that Former Wife unjustifiably failed to attend her own deposition, and deferred its award of attorney’s fees and costs pursuant to Florida Rule of Civil Procedure 1.380(d). Rule 1.380(d), in pertinent part, provides that “the court shall require the party failing to [appear at its own deposition] to pay the reasonable expenses caused by the failure, which may include attorneys’ fees, unless the court finds that the failure was justified or that other circumstances make an award of expenses unjust.” As Former Wife did not appeal the trial court’s order finding that she unjustifiably failed to attend her deposition and Rule 1.380(d) mandates an award for fees and costs under such circumstances, we must affirm this portion of the court’s order.
For the foregoing reasons, we reverse the entirety of the court’s order except for the portion awarding Former Husband $4,657.50 in fees and costs related to Former Wife’s failure to attend her deposition. We direct the trial court to enter an amended final judgment consistent with this opinion.

Affirmed in Part and Reversed in Part.

MAY and FORST, JJ., concur.

. Our Family Wizard is a subscription-based website which is designed as a medium for divorced or separated parents to communicate and manage issues regarding shared parenting.