WARNER, J.
In this marital post-dissolution case, the former wife appeals an order finding her in contempt and imposing sanctions for her failure to comply with the parties’ parenting plan. The trial court ordered one of the parties’ children to attend a wilderness program; held the former wife in contempt for violating the parenting plan; ordered the former wife to attend individual therapy; and ordered the former wife to pay for the cost of reunification therapy as well as a social investigation of the family. Because the child turned eighteen during the pendency of this appeal, the order has become moot as to the provisions directing him to attend a wilderness .program. We affirm the court’s finding of contempt and the requirement of payment of costs. We reverse, however, the provisions of the order requiring the former wife to attend therapy, because it was imprecise and vague as to its duration, relying on a change in attitude of the children rather than a change in the former wife’s psychological condition.
The parties obtained a dissolution of their marriage in 2011. The final judgment provided for shared parental responsibility for their three minor children, including a parenting plan and timesharing schedule. Several months later, the former husband filed a motion for contempt alleging that the former wife was intentionally frustrating his ability to have a positive relationship with the children.
As grounds, he alleged that she discussed details of the divorce litigation with them; made derogatory statements about him; refused to take action to deter disrespect of the former husband by his children; and interfered multiple times with the former husband’s visitation by failing *317 to deliver the children to his house or allowing the children to “opt out” of visitation. He requested that the court find the former wife in contempt; order makeup timesharing; order the former wife to attend counselling to avoid continued alienation of the children; and order the former wife to pay for the children’s therapy.
At the former husband’s request, and before hearing the contempt motion, the court appointed a reunification therapist to treat the family and a psychologist to conduct a social investigation of the family. Other hearings and motions were filed by the parties, many directed at the middle son, who adamantly refused to visit with his father. The former husband filed a supplemental motion for contempt alleging that the former wife continued to actively and passively violate the parenting plan and shared parental responsibility provisions in the final judgment. By this time, the parties’ eldest child had turned eighteen.
The court held a full hearing on the contempt motions, at which the court-appointed psychologist testified, as well as the parties. At the conclusion, the trial court entered an order making findings regarding specific dates on which the former wife interfered with the former husband’s visitation, as well as specific instances where the former wife contributed to the hostile relationship between the children and the former husband. The court found that the former wife was angry at the former husband and had empowered the sons to reject their relationship with their father. It held her in contempt for violations of the final judgment.
The court ordered the middle son to attend a special wilderness program during the summer. It also ordered individual therapy for the former wife so that she could learn not to interfere with the relationship between the children and their father, as well as how to share parental responsibility for the children. To that end, the court ordered her to commence individual therapy with a therapist of her choosing, and to “continue her therapy until she is able to convince [the two minor children] that it is her desire that they see their father and love their father and to create a loving, caring feeling toward their father in their minds.”
The court ordered the former wife to pay the full cost of the court-appointed psychologist who had investigated the family. It also ordered her to pay half the cost of the court-appointed reunification therapist. The court declined to award the former husband monetary compensation for lost visitation under section 61.13(4)(c), Florida Statutes (2012), noting that the former husband had not requested it in his prior pleadings and that the former wife therefore was not on notice of this possibility. It also ordered the former wife to pay the former husband’s attorney’s fees. The former wife appeals this ruling.
In her brief, the former wife raises several issues regarding the provision requiring the middle son’s attendance at the wilderness program. The son turned eighteen during the pendency of this appeal, and the parties agree that the family court has no further jurisdiction over the son at this time. We therefore deem these issues moot.
Next, the former wife complains that the court erred in holding her in contempt for violating the parenting plan, because it failed to identify specific provisions of the plan that she had violated and instead relied on the aspirational goal for her to foster a good relationship between the former husband and the children. A contempt order is reviewed for an abuse of discretion or fundamental error. Wilcox *318 on v. Moller, 132 So.3d 281, 286 (Fla. 4th DCA 2014). Yet, where the trial court bases contempt upon noncompliance with something an order does not say, “the standard of review is legal error, not abuse of discretion.” Harris v. Hampton, 70 So.3d 747, 749 (Fla. 4th DCA 2011) (quoting DeMello v. Buckman, 914 So.2d 1090, 1093 (Fla. 4th DCA 2005)).
We have examined the court’s contempt order and conclude that it recites multiple instances where the former wife violated specific provisions of the parenting plan. She actively participated in her two sons’ refusal to stay at the former husband’s home for his visitation, and for a period of several months she did not bring the children to the former husband’s home for visitation, as required by the parenting plan. In other specific instances, she scheduled social events for the children on the former husband’s time-sharing evenings, again in violation of a specific provision of the parenting plan.
Although the court also found that the former wife violated the plan’s aspirational goal to foster a good relationship with each parent, which itself may not have been precise enough to hold her in contempt, there was competent substantial evidence of specific violations of the parenting plan to support the finding of contempt. The requirements in the parenting plan in this case were far more specific than those in the temporary order in Marcus v. Marcus, 902 So.2d 259, 262 (Fla. 4th DCA 2005), on which the former wife, relies. The plan included sufficiently precise commands such that the former wife can be held in contempt for violating them.
The former wife also maintains that the trial court erred by holding her in contempt because it did not find that she had the ability to comply with the parenting plan. She argues the children themselves refused to stay with their father for visitation. “[I]n order to find an individual in contempt, the trial court must find that the contemnor had the ability to comply with the previous court order.” Harris, 70 So.3d at 749 (quoting Dep’t of Children & Families v. R.H., 819 So.2d 858, 862 (Fla. 5th DCA 2002)); see also Wilcoxon, 132 So.3d at 287 (“[A] party cannot be held in contempt for non-compliance with a court order if the party did not have the ability to comply with the court order.”).
The court, however, specifically found that she did have the ability to get the children to comply with visitation, because she did so upon occasion. And there was evidence in the record to support the finding that her failure to comply with visitation was willful. There was evidence that she encouraged the children not to spend time with their father, as provided to him in the parenting plan: the court-appointed social investigator opined that she had empowered the children to reject their relationship with their father. Moreover, even if the former wife could not be held in contempt for every time her middle son refused to stay with his father, she clearly had the ability to schedule social events on days other than those on which the former husband had visitation with the children. Thus, we conclude that there was competent substantial evidence to show that the former wife did have the ability to comply with the parenting order but affirmatively refused to do so.
As part of the remedy for her violations of the parenting plan, the court ordered the former wife to obtain psychological counseling and continue with it “until she is able to convince [the two minor children] that it is her desire that they see their father and love their father and to create a loving, caring feeling toward their father in their minds.” The former husband suggests that this issue is moot, as a successor judge later vacated that portion of the *319 order. The vacation of that order was entered while this appeal was ■ pending. Although this court relinquished jurisdiction for the trial court to rule on various issues, it does not appear that any written order was entered. Therefore, we address ■the issue.
The foregoing provision requiring therapy until the former wife can convince her children that she desires them to have a loving relationship with their father is not a purge provision. The former wife has not been threatened with incarceration if she does not go through with therapy. The trial court could impose a sanction under section 61.13(4)(e)7., Florida Statutes (2012), which permits the trial court to “impose any other reasonable sanction as a result of noncompliance” with the time-sharing portion of the parenting plan. We are hard-pressed, however, to classify therapy as a “sanction.” Instead, the court was hoping to remedy the dysfunctional relationships between the father and his children, which the court found were due largely to the former wife’s animosity towards the former husband. The statute does give the court the authority to “make specific orders regarding the parenting plan and time-sharing schedule as such orders relate to the circumstances of the parties and the nature of the case and are equitable....” § 61.13(5), Fla. Stat. (2012). This provision, however, has never been interpreted to give authority to order the parents into therapy.
Nevertheless, the former wife does not challenge the authority of the trial court to order counseling. She claims instead that the counseling provision conditions the duration of therapy on “vague, ambiguous and potentially insurmountable goals.” We agree that the provision is vague and is much too broad to be enforced. See Lanza v. Lanza, 804 So.2d 408, 409-10 (Fla. 4th DCA 2001). Therefore, we reverse the order to the extent that it requires the former wife to submit to therapy under the conditions set forth in the order.
Additionally, the former wife contests the award to the former husband of the costs of the experts, as well as his attorney’s fees.. She argues the former husband has a clearly superior ability to pay all of the litigation costs and fees. We conclude that the court had the authority to award the expert and attorney’s fees in accordance with the statute.
Section 61.13(4)(c), Florida Statutes (2012), authorizes the trial court to award costs and attorney’s fees incurred where a parent has not provided time-sharing to the other parent, as well as order any other reasonable sanction as a result of noncompliance:
(c) When a parent refuses to honor the time-sharing schedule in the parenting plan without proper cause, the court:
[[Image here]]
2. May order the parent who did not provide time-sharing or did not properly exercise time-sharing under the time-sharing schedule to pay reasonable court costs and attorney’s fees incurred by the nonoffending parent to enforce the time-sharing schedule.
[[Image here]]
7. May impose any other reasonable sanction as a result of noncompliance.
Together these provisions authorize the trial court to order the former wife to pay both the attorney’s fees and expert’s fees incurred in enforcing the parenting plan.
Robinson-Wilson v. Wilson, 932 So.2d 330 (Fla. 4th DCA 2006), explains why the “need and ability to pay” test of section 61.16(1) does not apply here:
This statutory power [under section 61.13(4) ] to award attorney’s fees is out *320 side of section 61.16(1), Florida Statutes (2004), which requires a consideration of “the financial resources of both parties” as part of the decision to award fees and costs. The power to award fees is triggered by the wrongful conduct of the custodial parent, without consideration of the noncustodial parent’s financial resources.
Id. at 331. As the trial court in this case was also enforcing the parenting plan provisions under section 61.13(4), the analysis of Robinsonr-Wilson applies. The court did not err in its award of attorney’s fees.
Finally, the former wife claims that the court’s order violates Perlow v. Berg-Per-low, 875 So.2d 383 (Fla.2004). She maintains that the court simply adopted the former husband’s proposed order. We find this contention to be meritless. Although the court did use substantial portions of the proposed order, it clearly reflects the court’s considered judgment, as the court did not include a rather substantial fine for lost visitation, which was part of the former husband’s proposed order but was removed by the court.
In accordance with the foregoing, we reverse that portion of the order requiring the former wife to obtain counseling. We affirm all other portions of the order except those which we conclude are moot.

Affirmed in part; reversed in part.

CONNER, J., concurs specially with opinion.
KLINGENSMITH, J., concurs specially with opinion.