# Third District Court of Appeal

## State of Florida

Opinion filed February 13, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-601
Lower Tribunal No. 13-12474
_____

**Rhody Cancino,**
Appellant,

vs.

**Fernando Cancino,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Pedro P. Echarte, Jr., Judge.

Alvarez | Gonzalez | Menezes, LLP, and Ignacio M. Alvarez and Carlos F. Gonzalez, for appellant.

Lourdes M. Fernandez, P.A., and Lourdes M. Fernandez, for appellee.

Before SALTER and FERNANDEZ, JJ., and LAGOA, Associate Judge.

LAGOA, Associate Judge.

Rhody Cancino (the "wife") appeals from an Order of Probation for

Respondent/Former Wife Rhody Cancino for Intentional Violations of the Court's

Final Judgment of Dissolution of Marriage and Final Order Ratifying Post Judgment Mediation Agreement (the "Probation Order"). The Probation Order finds the wife guilty of indirect criminal contempt for refusing to exercise shared parental responsibility. We reverse the Probation Order in its entirety.

I.      FACTUAL AND PROCEDURAL HISTORY

The wife and Fernando Cancino (the "husband") were married in 2002. The husband and wife have three minor children from the marriage. On May 6, 2013, the husband filed his petition for dissolution of marriage and other relief. On October 3, 2013, the husband and wife entered into a Mediated Marital Settlement Agreement (the "MSA"). The MSA included the following provision:

> **1. PARENTING PLAN, TIME SHARING AND SHARED PARENTAL RESPONSIBILITY OF MINOR CHILDREN**: The parties shall have time sharing with the minor children as set forth in Schedule "A" which is attached hereto, incorporated herein, and captioned "Schedule A". *Both parties shall share parental responsibility for the children consistent with Florida Statute.*

(emphasis added). On October 21, 2013, the trial court entered a Final Judgment of Dissolution of Marriage (the "Final Judgment"), which approved and incorporated the MSA into the Final Judgment.

The parties subsequently engaged in post-judgment mediation proceedings and on December 14, 2015, entered into a Second Post Judgment Mediation Agreement, which provided that any provision of the MSA not in conflict with the

2

Second Post Judgment Mediation Agreement shall remain in full force and effect. On December 28, 2015, the trial court entered an Order Ratifying Second Post Judgment Mediation Agreement Dated December 14, 2015.

On May 5, 2016, the husband filed his Amended Verified Motion/Affidavit for Sanctions and for Order to Show Cause for Indirect Criminal Contempt Against Respondent/Wife Rhody Cancino for Intentional Violations of the Court's Final Judgment of Dissolution of Marriage and Final Order Ratifying Post Judgment Mediation Agreement. The husband asserted that the wife acted in contravention of the Final Judgment and MSA by exercising unilateral decision-making with regard to the healthcare and general welfare of their children. Specifically, the husband alleged that the wife obtained a diagnosis of attention deficit disorder for one of the parties' children from their pediatrician on February 5, 2015, without telling him prior to the appointment, and that she did not notify him of the diagnosis. The husband also alleged that the child had been screened for an accommodation plan at school based upon a consent form signed by the wife. The husband stated the wife failed to provide him with prior notification of non-emergency medical and dental appointments for the children. Finally, the husband alleged that "in October of 2015, [wife] made an appointment for [the parties' child] to enroll in a visual therapy program, and only gave [the husband] an approximately 45-minute notice of the appointment. [The husband] objected to the

3

making of the appointment, and, after conducting thorough independent research, also objected to the visual therapy program."

Based upon the husband's allegations, on September 7, 2016, the trial court entered an Order to Show Cause for Indirect Criminal Contempt Against Respondent/Former Wife Rhody Cancino for Intentional Violations of the Court's Final Judgment of Dissolution of Marriage and Final Order Ratifying Post Judgment Mediation Agreement (the "Order to Show Cause"). The trial court conducted a hearing on the Order to Show Cause on December 5, 2016, and made the following findings:

> I find that the [husband] has proven beyond a reasonable doubt that the [wife] has on at least 3 occasions intentionally violated the father's shared parental responsibility.
> I find that you're guilty of indirect criminal contempt with respect to taking your child to the doctor for a fever. He gets to know before you do it.
> The eyeglass incident, he gets to know, participate in the decision, before you do it.
> The consent that you signed at the school for the screening and the assessment, you did it without his knowledge, without his consent. He didn't find out for months, so I find that you're guilty of indirect criminal contempt.

After finding the wife guilty of indirect criminal contempt, the trial court permitted the wife to present evidence of mitigating circumstance before sentencing. The following day, December 6, 2016, the trial court held a sentencing hearing, and found the wife guilty of indirect criminal contempt, withheld

4

adjudication of guilt, and placed the wife on six months of non-reporting probation. The trial court also orally pronounced special conditions of probation.

On February 17, 2017, the trial court entered the Probation Order. The trial court found that the wife "has willfully refused to exercise shared parental responsibility by exercising unilateral decision-making with regards to the non-emergency healthcare of the minor children in direct contravention to the Final Judgment and MSA beyond a reasonable doubt on at least three (3) separate occasions." The Probation Order further stated:

> 8. Specifically, on February 5, 2015, [the child's pediatrician] diagnosed one of the minor children . . . with Attention Deficit Disorder ("ADD"); at no time prior did Former Wife notify Former Husband that an appointment was scheduled on February 5, 2015, nor did Former Wife inform Former Husband of said diagnosis. Instead, Former Wife took or transmitted the diagnosis to the minor child's school, which caused a process toward the creation and implementation a Section 504 Accommodation Plan to begin. . . . Additionally, Former Husband learned the minor child had been screen[ed] based on a form signed unilaterally by Former Wife when the Former Husband and Former Wife attended a meeting regarding the diagnosis on April 23, 2015. Former Wife deliberately concealed both the screening and the diagnosis from the Former Husband thereby depriving Former Husband of exercising shared parental responsibility and being involved in the health care decisions relative to the minor child in a meaningful and integral way.
>
> 9. Former Wife violated shared parental responsibility beyond a reasonable doubt by failing to notify Former Husband of the minor children's medical

appointments, in advance, on at least three (3) non-emergency occasions, inclusive of the ADD diagnosis as set forth above. Former Wife did not provide Former Husband with prior notification of a January l0, 2015, non-emergency appointment for [the child] at the pediatrician for a fever and a sore throat and further failed to timely inform Former Husband of an experimental visual therapy program appointment for [the child] by providing Former Husband with only a couple hours' notice for the appointment in Fort Lauderdale.

The wife's appeal from the Probation Order ensued.[1]

II.  STANDARD OF REVIEW

Generally, "[a] judgment of contempt comes to the appellate court clothed with a presumption of correctness and will not be overturned unless a clear showing is made that the trial court either abused its discretion or departed so substantially from the essential requirements of law as to have committed fundamental error." DeMello v. Buckman, 914 So. 2d 1090, 1093 (Fla. 4th DCA 2005). However,  "[w]hen a trial court holds a party in contempt based on that party's failure to follow an order that does not 'clearly and definitely' make the party aware of what the party must do, the standard of review is legal error." Kane v. Sanders, 232 So. 3d 1107, 1111 (Fla. 3d DCA 2017) (quoting Rojo v. Rojo, 84 So. 3d 1259, 1261 (Fla. 3d DCA 2012)); see also Ford v. Ford, 153 So. 3d 315, 318 (Fla. 4th DCA 2014) ("[W]here the trial court bases contempt upon

---

[1] The Probation Order was stayed pending the wife's appeal in this Court.

noncompliance with something an order does not say, 'the standard of review is legal error, not abuse of discretion.'" (quoting Harris v. Hampton, 70 So. 3d 747, 749 (Fla. 4th DCA 2011))); Wilcoxon v. Moller, 132 So. 3d 281, 286 (Fla. 4th DCA 2014).

III.    ANALYSIS

We begin our analysis by addressing the written Probation Order's failure to conform to the trial court's oral pronouncement of the factual basis for the finding of contempt.  To the extent a written contempt order fails to conform to the trial court's oral pronouncements, the contempt order must be reversed.[2]  Romero v. Romero, 916 So. 2d 952, 954 (Fla. 3d DCA 2005); see also Glick v. Glick, 874 So. 2d 1238, 1241 (Fla. 4th DCA 2004).  This is so because of the well-established principle that a trial court's oral pronouncement controls over its written order. Cajuste v. Herlitschek, 204 So. 3d 80, 83 (Fla. 4th DCA 2016); Hampton Manor, Inc. v. Fortner, 141 So. 3d 1260, 1262 (Fla. 5th DCA 2014); Glick, 874 So. 2d at 1241; see also Shacker v. State, 106 So. 3d 36, 36 (Fla. 3d DCA 2013) (reversing order revoking probation to the extent the order did not "correctly reflect the oral pronouncement" regarding commission of violations of probation); Ulano v.

_____

[2] Although not relevant here because the trial court withheld adjudication, we note that a judgment of indirect criminal contempt need not contain written findings of fact where oral findings are made on the record.  Gidden v. State, 613 So. 2d 457, 460 (Fla. 1993); Sandelier v. State, 238 So. 3d 831, 835 n.1 (Fla. 4th DCA 2018).

7

Anderson, 626 So. 2d 1112, 1112 (Fla. 3d DCA 1993) ("Reversal is required where a final judgment is inconsistent with a trial court's oral pronouncements.").

Here, the trial court's oral ruling that the wife was guilty of indirect criminal contempt was based upon three specific incidences: (1) "taking your child to the doctor for a fever" without the husband knowing before she did so; (2) "the eyeglass incident, he gets to know, participate in the decision, before you do it"; and (3) signing the consent form permitting the school to institute a screening/assessment of the parties' child.[3] With regard to the "eyeglass incident," however, the Probation Order does not conform to the trial court's oral pronouncement. Specifically, the Probation Order finds the wife in contempt for failing to timely notify the husband of the appointment "by providing Former Husband with only a couple hours' notice for the appointment in Fort Lauderdale," whereas the trial court's oral pronouncement found the wife guilty of indirect criminal contempt for not permitting the husband to "participate in the decision, before you do it." Given this conflict, the oral pronouncement controls.

Additionally, the Probation Order significantly expands upon the trial court's oral pronouncement by finding the wife in contempt for failing to notify the husband prior to a February 5, 2015, pediatrician appointment at which the wife

_____

[3] During the wife's testimony in support of mitigating circumstances subsequent to the trial court's finding of guilt, the trial court reiterated that its finding of indirect criminal contempt was based upon "[e]yeglasses, fever, consent at school."

8

obtained a diagnosis of attention deficit disorder for one of the parties' children, and for failing to inform the husband of the attention deficient disorder diagnosis. The trial court's oral ruling, however, did not contain a finding of guilt on these bases, and was instead limited only to the wife's signing of the consent form for screening/assessment of the parties' child. We therefore confine our analysis to the remaining oral pronouncements—taking the child to a doctor because of a fever, the "eyeglass incident," and the wife's signing of the consent form. See, e.g., Cajuste, 204 So. 3d at 83-84 (conducting analysis based on trial court's oral pronouncement where conflict existed between oral pronouncement and written orders).

Turning to the issue on appeal, the wife argues that the Probation Order must be reversed because the evidence failed to establish that she intentionally violated a clear and precise court order. We agree.[4]

Unlike civil contempt, which is used to "obtain *compliance* on the part of a person subject to an order of the court[,] . . . [t]he purpose of *criminal* contempt . . . is to *punish*. Criminal contempt proceedings are utilized to vindicate the authority of the court or to punish for an intentional violation of an order of the court." Bowen v. Bowen, 471 So. 2d 1274, 1277 (Fla. 1985) (emphasis in original). "Criminal contempt proceedings are either direct or indirect. Conduct committed

---

[4] Because we are reversing on this basis, we do not address the remaining issues raised by the wife.

9

outside the presence of the court is indirect criminal contempt." Plank v. State, 190 So. 3d 594, 606 (Fla. 2016) (citation omitted); accord Pugliese v. Pugliese, 347 So. 2d 422, 425 (Fla. 1977) ("Where an act is committed out of the presence of the court, the proceeding to punish is for indirect (sometimes called constructive) contempt.").

Where a charge of criminal contempt "is based upon the violation of a court order, the contemnor's intent to violate the order is a necessary element of the offense." Haas v. State, 196 So. 3d 515, 523 (Fla. 2d DCA 2016). Intentional violation of court's order must be proven beyond a reasonable doubt. Id. Furthermore, "[b]ecause criminal contempt is 'a crime in the ordinary sense,' imposition of criminal contempt sanctions requires that a contemnor be afforded the same constitutional due process protections afforded to criminal defendants." Parisi v. Broward County, 769 So. 2d 359, 364 (Fla. 2000) (quoting Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 826 (1994)). To that end, Florida Rule of Criminal Procedure 3.840, which governs a prosecution for indirect criminal contempt, "requires that the court issue an order to show cause with reasonable time allowed for preparation of the defense and further provides that the defendant is 'entitled to be represented by counsel, have compulsory process for the attendance of witnesses, and testify in his or her own defense.'" Plank, 190 So. 3d at 607 (quoting Fla. R. Crim. P. 3.840(d)).

10

"It is well established that a party cannot be sanctioned for contempt for violating a court directive or order which is not clear and definite as to how a party is to comply with the court's command."[5] <u>Ross Dress for Less Va., Inc. v. Castro</u>, 134 So. 3d 511, 523 (Fla. 3d DCA 2014); <u>accord</u> <u>Smith v. State</u>, 954 So. 2d 1191, 1194 (Fla. 3d DCA 2007) ("When a finding of contempt is based upon a violation of a court order, that order must be one which clearly and definitely makes the person aware of its command."); <u>Kranis v. Kranis</u>, 313 So. 2d 135, 139 (Fla. 3d DCA 1975). For that reason, "when a final judgment or order is not sufficiently explicit or precise to put the party on notice of what the party may or may not do, it cannot support a conclusion that the party willfully or wantonly violated that order." <u>Keitel v. Keitel</u>, 716 So. 2d 842, 844 (Fla. 4th DCA 1998).

Moreover, because a finding of contempt must be based upon a violation of the clear terms of a court order, a provision which is merely inherent in the trial court's order will not support a finding of contempt. <u>Id.</u> at 844 ("[I]mplied or inherent provisions of a final judgment cannot serve as a basis for an order of contempt."); <u>see</u> <u>Wilcoxon</u>, 132 So. 3d at 287 ("A court cannot base contempt upon noncompliance with something an order does not say, and we will not read implications into an order to justify contempt."); <u>Reder v. Miller</u>, 102 So. 3d 742, 744 (Fla. 2d DCA 2012) ("While [appellant's] acts may have violated the 'spirit'

---

[5] This principle applies within the context of both civil contempt and criminal contempt. <u>See</u> <u>Wilcoxon</u>, 132 So. 3d at 286.

or 'intent' of the trial court's orders, a finding of contempt requires the violation of the letter of an order—not its spirit.").

Relevant for our purposes, an order entered within the context of dissolution proceedings which is not sufficiently explicit and precise as to a party's obligations will not support a finding of contempt. For example, in Kane v. Sanders, 232 So. 3d 1107 (Fla. 3d DCA 2017), the parenting plan contained a "right of first refusal" clause, which stated: "'To the extent the party entitled to access with the child is unable to enjoy access to the child for whatever reason, then the other parent shall be entitled to the right of first refusal to care for the child over any other third party.'" Id. at 1109 n.1. The father filed a motion for contempt, alleging that he was deprived of his right of first refusal on five occasions when the mother left "the children at home with child care for a matter of hours." Id. at 1109. The trial court granted the father's motion for contempt. Id. at 1110. In reversing and vacating the trial court's order finding the mother in contempt, this Court concluded that "the challenged order fails to contain a 'clear and definite command' sufficient to notify a party of his or her required conduct and is not enforceable via contempt." Id. at 1111 (quoting Miranda v. Miranda, 566 So. 2d 16, 18 (Fla. 4th DCA 1991)); see also Wilcoxon, 132 So. 3d at 287 (finding that trial court erred in holding wife in contempt of order which "instructed that '[t]he Former Wife's current husband shall not be present anywhere that the Former

12

Husband is'" because the order "was not specific enough as to what Former Wife's duties were in regard to her current husband"); Marcus v. Marcus, 902 So. 2d 259, 263 (Fla. 4th DCA 2005) (reversing order finding wife in contempt and concluding that the "temporary relief order was not specific enough to put the wife on notice of the conduct expected of her when one of the children simply refuses to stay with the husband and runs away when he is sent there"); Cooley v. Moody, 884 So. 2d 143, 145 (Fla. 2d DCA 2004) (reversing finding of contempt for mother's failure to effectuate a transfer of custody where "there is no language in the trial court's temporary custody order that directs the Mother to do so" even though "[i]t may have been the trial court's intent" to so order); Keitel, 716 So. 2d at 884 (holding that trial court erred in finding wife in contempt for violating provision that gave husband "reasonable visitation" when she relocated out of state and stating that "[a]lthough [husband's] visitation rights are implicitly obstructed, implied or inherent provisions of a final judgment cannot serve as a basis for an order of contempt"); Lawrence v. Lawrence, 384 So. 2d 279, 280 (Fla. 4th DCA 1980) ("We find that the trial court's order was not sufficiently explicit and precise with reference to the time for payment of arrearages to support a conclusion that appellant willfully or wantonly violated that order."); Kranis, 313 So. 2d at 139 (holding that the trial court abused its discretion in denying the wife's motion to vacate contempt order because the final judgement's provision for the husband's

13

"reasonable rights of visitation" was not "'explicit and precise', as a command or judicial direction to the wife").

Given these principles, we find that the Final Judgment, which incorporated the terms of the MSA, was not sufficiently explicit and precise with regard to the wife's obligations to exercise shared parental responsibility concerning the non-emergency health care of the parties' children to support a finding of indirect criminal contempt. Shared parental responsibility, as defined in section 61.046(17), Florida Statutes (2012), "means a court-ordered relationship in which both parents retain full parental rights and responsibilities with respect to their child and in which both parents confer with each other so that major decisions affecting the welfare of the child will be determined jointly." Here, the trial court found that the wife intentionally violated the father's shared parental responsibility by taking the parties' child to the doctor for a fever, taking the parties' child to an eyeglass appointment where the husband did not "participate in the decision, before you do it," and signing a consent form permitting the school to institute a screening/assessment of the parties' child.

The Final Judgment, however, provides only that "[b]oth parties shall share parental responsibility for the children consistent with Florida Statute." This provision is not so clear and definite as to instruct the wife regarding her obligation to confer with the husband concerning non-emergency medical treatment of the

14

parties' children. Indeed, the provision fails to explicitly set forth the parties' obligation under the Florida Statues—to "confer with each other so that major decisions affecting the welfare" of the children will be determined jointly. § 61.046(17), Fla. Stat. (2012). And although the provision references the "Florida Statute," the provision does not direct the parties to the specific section at issue, section 61.046(17). Moreover, any contention that the statutory obligation of "shared parental responsibility" is inherent in the final judgment because it references the Florida Statues in general must fail because "implied or inherent provisions of a final judgment cannot serve as a basis for an order of contempt." Keitel, 716 So. 2d at 844. In sum, there is nothing in the Final Judgment to put the wife on notice as to what she is required to do in order to comply with the trial court's command to "share parental responsibility for the children consistent with Florida Statute." The Probation Order finding the wife guilty of indirect criminal contempt therefore must be reversed.

Our sister court's opinion in Sabatini v. Wigh, 98 So. 3d 244 (Fla. 1st DCA 2012), serves as a useful comparison. In Sabatini, the wife was held in contempt for her failure to comply with the shared parental responsibility requirements in the parties' final judgment of dissolution. Id. at 244-45. Specifically, the final judgment

> *directed the parties to share parental responsibility and jointly determine major decisions affecting the welfare of*

15

> *the child, such as her education*. The judgment required the parties to work cooperatively to resolve any disputes, and if they were unable to do so on their own, they were required to consult with a reasonably qualified third party in an effort to resolve the dispute.

Id. at 245 (emphasis added). The parties agreed to enroll their child in a school near the husband's home in Jacksonville. Id. When the wife enrolled the child in a different school located in Palm Coast without consulting with the husband, the husband sought an order finding the wife in contempt. Id. The trial court found that the wife "failed to comply with the shared parental responsibility requirements of the dissolution judgment by unilaterally enrolling the child in the Palm Coast school in contravention of the parties' agreement that the child would be enrolled in the Jacksonville school near the former husband's home." Id. at 245-46. In affirming the trial court's finding of contempt, the First District stated that the final judgment contained a "clear directive," and held that the trial court did not abuse its discretion in finding that the wife "willfully failed to comply with the requirement in the dissolution judgment that she jointly decide issues related to the child's education with the former husband." Id. at 246. Unlike the circumstances in Sabatini, the Final Judgment in this case does not state that the parties shall "jointly determine major decisions affecting the welfare of the child[ren]," and we are unable to conclude that it sets forth a "clear directive" as to the wife's requirements in exercising shared parental responsibility regarding nonemergency

16

medical treatment of the children. Cf. Ford, 153 So. 3d at 318 (concluding that parenting plan included "sufficiently precise commands" such that the wife could be held in contempt for violating specific provisions).

IV.    CONCLUSION

Shared parental responsibility is a "court-ordered relationship," § 61.046(17), Fla. Stat., and the requirements of that relationship must be stated explicitly in order to support a finding of contempt on the basis of a party's willful refusal to follow its dictates. See Cooley, 884 So. 2d at 145 ("[T]he law also imposes upon the court the requirement to be explicit and precise in its commands if strict compliance is to be exacted in the form of a contempt sanction."). Here, the provision that the parties "shall share parental responsibility for the children consistent with Florida Statute" fails to set forth a sufficiently precise command so as to "put the [wife] on notice of what the [wife] may or may not do." Keitel, 716 So. 2d at 844.

As a result, the Probation Order finding the wife in indirect criminal contempt for intentionally refusing to exercise shared parental responsibility cannot stand. Accordingly, we reverse the Probation Order in its entirety.

Reversed.