DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JAMES A. THORNTON,**
Appellant,

v.

**AMBER M. THORNTON** n/k/a **AMBER M. WILDES,**
Appellee.

No. 4D22-657

[March 22, 2023]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Okeechobee County; Jennifer Alcorta Waters, Judge; L.T. Case No. 472015DR000575DRAXMX.

Jonathan Mann and Robin Bresky of Schwartz Sladkus Reich Greenberg Atlas LLP, Boca Raton, for appellant.

Craig A. Boudreau, West Palm Beach, for appellee.

WARNER, J.

Appellant Father appeals an order granting Appellee Mother's revised amended motion for contempt. The court found the Father in contempt for violations of the agreed parenting plan incorporated into their final judgment of dissolution despite the fact that the parents had resolved some of their disputes through parenting coordination pursuant to section 61.125, Florida Statutes (2020). To the extent that the court found the Father in contempt for matters resolved through parenting coordination agreements, we reverse. To the extent that the parental coordination agreements did not cover their disputes, the trial court did not abuse its discretion in finding the Father in contempt.

**Facts**

The parents divorced in December of 2018. The final judgment of dissolution included a marital settlement agreement, incorporating a parenting plan for the parents' two children. The plan provided for equal timeshare with the children with a weekly rotation, and the parents were to confer on all major parenting decisions. Some specific requirements of

the agreement included provisions that: 1) the parent with timesharing would transport the children to their sporting activities; 2) the parent without timeshare on a child's birthday was entitled to spend two hours with that child on his or her birthday; 3) a parent traveling with the children out of state must provide the other with a detailed travel itinerary; 4) the parent who did not have timesharing would be allowed to talk to the children between seven and eight each evening; and 5) the Father would provide and pay for cell phones for the children and the parents would facilitate communication between the children and the non-custodial parent.

From the beginning, the parents had many difficulties co-parenting. Within a year of their divorce, the Mother filed her original motion for contempt. The Mother claimed the Father had violated provisions of the plan by unilaterally withdrawing the children from sports, by not providing her with a detailed itinerary when he took the children on out-of-state trips, by not making sure the children communicated with her at least once a day during the Father's timeshare, by refusing to communicate directly with her on the phone, and by refusing to provide their daughter with a cell phone.

To resolve some of these disputes, the court granted the Father's request to appoint a parenting coordinator. The parents met with the parenting coordinator for five months and entered into sixteen written agreements at these sessions. Many of these agreements involved implementing better communication, both between the children and the noncustodial parent and between the parents themselves. In January 2021, the parenting coordinator informed the court she was unwilling to continue working with the parents.

In February 2021, the Mother filed an amended motion for contempt against the Father. The Mother did not delete any previous allegations and brought several new allegations, essentially claiming that even after the parenting coordinator sessions, the Father continued to engage in the same conduct that led to her original contempt motion.

The Mother alleged that the Father had prevented the children from participating in their respective sports activities in the fall of 2018, the spring of 2019, and the fall of 2020. The Mother also alleged that the Father had failed to provide her with a detailed itinerary for his trip to Idaho with the children, and she claimed that she had no contact with the children while they were away.

2

Further, the Mother claimed that the Father would not let either child use a cell phone during his timesharing, and refused to pay for the children's cell service. She also alleged that she had to purchase a cellphone for one child and that the Father did not facilitate phone contact with her during his timeshare, in violation of the parenting plan. The Mother claimed she had no contact with the daughter and only limited contact with the son during the Father's timeshare. Finally, she alleged that in January 2021, the Father took the children out of town during their son's birthday weekend in violation of the parenting plan.

After a lengthy contempt hearing, the court found the Father in contempt for: 1) refusing to take the children to their extracurricular activities; 2) refusing to provide a detailed itinerary when he took the children on out-of-state vacations; 3) preventing the Mother from spending time with the children on their birthdays; 4) refusing to communicate with the Mother over the phone; and 5) failing to facilitate communication between the Mother and the children. To cure the contempt, the court ordered the Father to: 1) provide the children each with cell phones; 2) facilitate communication by having the children answer calls from the Mother or require them to call the Mother every day; 3) provide detailed itineraries for travel with the children, with specific locations of stays, and specific flight information; 4) transport the children to all extracurricular activities; 5) be the only adult to communicate with the Mother with respect to the children; and 6) allow the Mother makeup timesharing with the children on the next birthday which falls within the Father's time sharing. The Father appeals.

## Analysis

The Father contends that the court erred in holding him in contempt, because any violations were not willful, and many of the violations concerned agreements that were subsequently modified with the parenting coordinator. We agree that the court could not hold the Father in contempt for communications issues that were resolved with the parenting coordinator. With respect to the other issues not resolved with the parenting coordinator, we conclude the court did not abuse its discretion in finding the Father in contempt for willfully violating the parenting plan.

Section 61.125 allows the court to refer disputes to a parenting coordinator as a form of alternative dispute resolution. The statute provides:

> The purpose of parenting coordination is to provide a child-focused alternative dispute resolution process whereby a

parenting coordinator assists the parents in creating or implementing a parenting plan by facilitating the resolution of disputes between the parents by providing education, making recommendations, and, with the prior approval of the parents and the court, making limited decisions within the scope of the court's order of referral.

§ 61.125(2), Fla. Stat. (2020). The court may refer a dispute to a parenting coordinator to assist the parties in resolving disputes regarding the parenting plan. § 61.125(3), Fla. Stat. (2020). The marital settlement agreement in this case also authorized parental coordination as an alternative dispute mechanism.

To resolve the issues raised in the Mother's the motion for contempt, the Father requested the parties use a parenting coordinator. It does not appear that the Mother objected, and the court granted the Father's request. The parties made sixteen agreements at the parenting coordinator sessions, which were admitted into evidence. Most of these agreements involved how and when the children would communicate with the Mother.

Nevertheless, when the Mother filed a renewed motion for contempt, she asserted those same complaints ignoring the agreements reached. The entire purpose of parenting coordination would be defeated if a parent could ignore any agreements when pursuing a motion for contempt. For that reason, the trial court erred in holding the Father in contempt for his prior conduct that was the subject of the parenting coordination agreements.

"'[T]he purpose of a *civil* contempt proceeding is to obtain *compliance* on the part of a person subject to an order of the court.'" *Wilcoxon v. Moller*, 132 So. 3d 281, 286 (Fla. 4th DCA 2014) (alteration in original) (citation omitted). Here, the Mother and the Father resolved several of their issues with the parenting coordinator, making modifications to their communication agreements. Thus, having satisfied the purpose of civil contempt, the Mother could not renege on their agreements and request the court to hold the Father in contempt for prior conduct already addressed. The court erred in finding contempt and ordering a "purge" provision contradicting the agreements the parties reached at parenting coordination.

However, even with parenting coordination, the parents did not reach any written agreement regarding the children's participation in sports, detailed itineraries for out-of-state travel, or the noncustodial parent's

4

visitation with a child on his or her birthday. As to those matters, the court heard testimony from multiple witnesses regarding the parents' difficulties. The court's findings are based upon competent substantial evidence and the court's credibility determinations. While the Father contends that during parental coordination the parties orally agreed to strike the birthday agreement, the court accepted the Mother's testimony that she did not agree to any modification. The court did not err in finding the Father in contempt on these issues.

## Conclusion

For the foregoing reasons, we affirm the order holding the Father in contempt and providing purge provisions as to the birthday visitation, the out-of-state travel, and the children's extracurricular activities. We reverse the order of contempt and purge provisions as to the communications issues, as these were the subject of the parenting coordination agreements.

*Affirmed in part and reversed in part.*

KLINGENSMITH, C.J., and CIKLIN, J., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***

5