FULMER, Chief Judge.
Dawn Yvonne Faulkner Pearson (the Mother) appeals the trial court’s order finding her in contempt for being in willful violation of a July 9, 2003, order that specified a visitation • schedule between Lance William Pearson (the Father) and the parties’ minor child. Because the record is devoid of any evidence to support the contempt order against the Mother, we reverse.
In his motion for contempt, the Father alleged that the trial court entered an order directing that supervised visitation between the Father and the child occur at the Children’s Justice Center on July 9, 2003, and during alternate weeks thereafter. The Father further alleged that the Mother failed to comply with the order by “refusing to produce said child at said center at the appointed time on July 9, 2003.” In a supplement to his motion, the Father alleged that the Mother “has informed said center that she will not produce said child at said center during alternate weeks after July 9, 2003.”
An evidentiary hearing was held on the motion at which the trial court heard the testimony of the Father, the program coordinator of the Center, the maternal grandfather, and a clinical social worker. The Mother did not attend the hearing. At the conclusion of the hearing, the trial court announced its ruling and entered an initial and amended written order that concluded that the Mother had “willfully failed to comply with the court’s orders of visitation.”
A judgment of contempt is entitled to a presumption of correctness and it will not be disturbed when supported by the record.... [A]n appellate court will not disturb a trial court’s factual findings when supported by competent substantial evidence; however, the appellate court is not bound by a trial court’s conclusions of law.
Milian v. State, 764 So.2d 860, 861 (Fla. 4th DCA 2000) (citation and internal quotation marks omitted); see also Buchanan v. Buchanan, 932 So.2d 270, 2005 WL 2467618 (Fla. 2d DCA Oct. 7, 2005) (reversing a civil contempt order because the appellate record contained no competent substantial evidence to support the trial court’s finding of the contemnor’s ability to pay the purge amount).
The transcript of the contempt hearing reveals that none of the testimony presented supports the trial court’s contempt order. The first witness was the *603 Father. His testimony was brief and addressed only the allegations regarding the visitation scheduled for July 9. He testified that he went to the Center for his visitation and that as he approached the Center he saw the Mother standing on the sidewalk talking on her cell phone. He heard her say, “How can we stop this?” His testimony then concluded with the following exchange:
Q [Father’s counsel]. Okay. Did you, in fact, have visitation with your son on that date at the Children’s Justice Center?
A. I did not.
Q. Did you go into the office or reception area of the Center?
A. I did.
Q. Okay. And despite that, you did not have visitation?
A. No, sir.
Counsel for the Father next called the Mother to testify, “if she’s here.” She was not present, and the trial court directed that the record reflect that she failed to appear. Upon inquiry by the judge, counsel for the Father advised that the Mother was not under subpoena. Neither had the Mother been directed to appear by court order.
The most significant witness to testify was Patricia Waterman, the program coordinator for the Center. She testified that the July 9 order directed that the child be accompanied by his maternal grandfather during the supervised visitations. She stated that they both came to the Center as ordered but that the visitation did not occur because she cancelled it. Her testimony explaining the events giving rise to the cancellation is best summarized in the following excerpt from her written report, which was admitted into evidence at the hearing:
7/09/03 Visit cancelled.
Mr. Pearson arrived on time at the CJC. [Child and maternal grandfather] arrived on time. [Maternal grandfather] contacted the CJC, via cell phone while at the designated parking area, and stated to staff that [child] would not get out of the car. Security personnel was dispatched for escort and witnessed [child’s] reluctance to attend the visit. CJC staff spoke with security personnel to verify the [child’s] behavior. CJC staff spoke with Mr. Pearson and explained the above and informed Mr. Pearson that the visit was cancelled.
On cross-examination by the Mother’s counsel, Ms. Waterman clarified that she was the person who cancelled the visitation because the child would not get out of the car. Ms. Waterman presented no testimony regarding the Mother other than to respond “No” to the question: “Does your file contain any record of statements on that day, July 9, 2003, by Dawn Yvonne Faulkner Pearson?”
The clinical social worker was called by Mother’s counsel to testify. She stated that she was with the child, his grandparents, and the Mother when they went to the Center for the visitation. Most of the questions posed to her were never answered because objections by Father’s counsel were sustained. However, the brief testimony she did present was consistent with the testimony of Ms. Waterman. The grandfather was also called by Mother’s counsel to testify. His testimony was also very brief and was consistent with that presented by Ms. Waterman.
Given the testimony presented, we are puzzled by the trial court’s determination that the Mother violated the visitation order. Other than the Father’s testimony regarding the Mother’s statement while talking on her cell phone, there was no testimony presented by any witness regarding any actions or statements made by *604 the Mother. And, it is undisputed that the maternal grandfather appeared with the child at the Center, as ordered, ready to participate in the scheduled visitation, which was cancelled by Ms. Waterman because of the child’s reluctance and not because of any action by the Mother. In its order, the trial court stated,
The Mother has been given primary residential custody of the child, so the responsibility for controlling and directing the minor child’s behavior is charged to the [MJother. For this reason the Court concludes the Mother has certainly failed to encourage the child’s visitation with the Father, who had driven from the State of Mississippi and would have to drive back for any additional visitation.
There was no testimony presented at the contempt hearing that supports attributing the child’s behavior on July 9 to any action of the Mother. And, the trial court’s order contains no factual findings regarding any action or inaction on the part of the Mother that would support the trial court’s conclusions that the Mother is responsible for the child’s behavior.[1]
Because we reverse the adjudication of contempt, the propriety of the sanction imposed becomes a moot issue. However, we discuss the eri'or in order to prevent its repetition in other cases. The conclusion of the contempt order provides:
Based on the Mother’s willful failure to allow the Father any type of visitation with the child, including her failure to encourage any visitation, and also considering her failure to even appear at the hearing on February 3, 2004, this Court finds that primary custody of the child shall be transferred to the Father effective immediately and shall continue until further order of the Court. The Father will have the authority to remove the child with him to the State of Mississippi and shall enter the child into counseling with a competent child counselor to assist in the adjustment of relocation.
In his motion for contempt, the Father did not seek a change of custody, nor did he ask that he be allowed to remove the child from the jurisdiction. In this appeal, he properly concedes that the trial court exceeded its authority by ordering a transfer of custody. See Pelliccia v. Arce, 867 So.2d 619 (Fla. 2d DCA 2004); LaLoggia-VonHegel v. VonHegel, 732 So.2d 1131 (Fla. 2d DCA 1999).[2] Further, because the Mother was under no legal obligation to appear at the hearing, it was improper for the trial court to ascribe fault for her absence.
Because the order of contempt is not supported by competent substantial evidence, we reverse.
Reversed and remanded with directions to vacate the contempt order.
STRINGER and DAVIS, JJ., Concur.

. We are aware of the fact that these parties have been litigating since their dissolution in 2000. The trial court may have based its ruling in this case on conclusions derived from prior proceedings that are not part of the record developed for the contempt motion.

. The trial court's order transferring custody was stayed by this court pending the outcome of this appeal. Therefore, our reversal does not impact the physical custody of the child.