NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

RAYMOND A. HAAS,                    )
                                    )
        Appellant,                  )
                                    )
v.                                  )    Case No. 2D15-319
                                    )
STATE OF FLORIDA,                   )
                                    )
        Appellee.                   )
_____    )
                                    )
DOROTHY DiFIORE,                    )
                                    )
        Appellant,                  )
                                    )
v.                                  )    Case No. 2D15-321
                                    )
STATE OF FLORIDA,                   )    CONSOLIDATED
                                    )
        Appellee.                   )
_____    )

Opinion filed July 15, 2016.

Appeal from the Circuit Court for Sarasota
County; Peter A. Dubensky, Judge.

Marie A. Borland of Hill, Ward & Henderson,
P.A., Tampa, for Appellants.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Jason M. Miller, Assistant
Attorney General, Tampa, for Appellee.


WALLACE, Judge.

Raymond A. Haas and Dorothy DiFiore, both of whom are members of The Florida Bar, appeal a judgment finding each of them guilty of two counts of indirect criminal contempt and orders imposing probation and other sanctions on them. Physicians Group of Sarasota, LLC (Physicians Group), initiated and prosecuted the contempt proceedings in the underlying action brought by Physicians Group and W.S. Media, Inc., against Dr. Jeffrey Lauffer, a chiropractor, and against an attorney who had previously represented Dr. Lauffer. Mr. Haas and Ms. DiFiore represented Dr. Lauffer in the underlying action, and the contempt orders at issue arise out of orders that were entered and events that occurred in that proceeding. Because Physicians Group failed to present evidence proving beyond a reasonable doubt that either Mr. Haas or Ms. DiFiore acted with the intent to disobey a court order, we reverse.

## I. THE FACTS AND PROCEDURAL BACKGROUND

Physicians Group and W.S. Media, the plaintiffs in the underlying action, are part of the lawyer and medical referral service known as 1-800-ASK-GARY. Physicians Group operates a chain of medical clinics. W.S. Media licenses the 1-800-ASK-GARY trademark.

Before the filing of the underlying action in the trial court, Dr. Lauffer had worked for Physicians Group as a chiropractor and as a technician operating a magnetic resonance imaging machine. Dr. Lauffer's written employment agreement with Physicians Group provided that he would not "remove, copy, transfer, or transmit to any person, natural or corporate, any Patient Records at any time." The employment agreement contained additional provisions prohibiting Dr. Lauffer from divulging or disclosing Physicians Group's proprietary and trade secret information. The

employment agreement specifically required Dr. Lauffer to return all such information to Physicians Group at the termination of his employment.

In 2011, anticipating that Physicians Group would initiate litigation against him, Dr. Lauffer consulted the Tampa-based law firm of Haas, Lewis, DiFiore, P.A. (the Firm). Both Mr. Haas and Ms. DiFiore were shareholders and practicing attorneys in the Firm. After Physicians Group and W.S. Media sued Dr. Lauffer, various attorneys at the Firm, including Mr. Haas and Ms. DiFiore, represented him in the underlying litigation until September 23, 2013, the date of a trial court order allowing them to withdraw. During consultations regarding the proposed representation, Dr. Lauffer provided the Firm and its members with copies of patient records, protocols, and other records that Physicians Group deemed to be its confidential and proprietary information.

In January 2012, Physicians Group and W.S. Media filed the underlying action in the Sarasota Circuit Court against Dr. Lauffer and an attorney practicing in Tampa (the attorney defendant). The attorney defendant was not associated with the Firm, but he had previously represented Dr. Lauffer in matters pertaining to the 1-800-ASK-GARY enterprises. The firm of Weekley Schulte Valdes, LLC (the WSV firm) represented the attorney defendant in the litigation.

The plaintiffs' amended complaint asserted five claims against Dr. Lauffer: (1) a violation of the Florida Deceptive and Unfair Trade Practices Act, (2) unfair competition, (3) theft of trade secrets, (4) breach of contract, and (5) civil conspiracy. Dr. Lauffer's possession and retention of various patient records and proprietary information allegedly "stolen" from Physicians Group was a central theme of the amended complaint. The Firm answered the amended complaint on behalf of Dr.

Lauffer and filed a counterclaim asserting three claims: (1) defamation, (2) civil conspiracy, and (3) the violation of Florida's Civil Remedies for Criminal Practices Act.[1]

The course of the litigation in the trial court became highly contentious. One of the focal points of the contention was the plaintiffs' desire to preserve the confidentiality of documents disclosed in discovery to Dr. Lauffer and his attorneys. The plaintiffs were anxious to prevent the further disclosure and dissemination of these documents to third parties not directly involved in the litigation. In a continuing effort to address the confidentiality issue, the trial court issued seven orders between January 18, 2013, and July 31, 2013. Taken together, the confidentiality orders are lengthy and complex; their provisions defy a complete summary. In a nutshell, the orders established a system whereby documents produced by the plaintiffs in discovery and deemed to be confidential by the plaintiffs would be marked "CONFIDENTIAL" or "CONFIDENTIAL, ATTORNEYS' EYES ONLY" and would be subject to a variety of restrictions regarding their further disclosure and dissemination, including that any such documents used in the underlying litigation would be filed under seal. The opposing parties had an opportunity to object to these designations within a set time and to obtain a hearing on any objections.

The initial confidentiality orders left an important issue unresolved. Dr. Lauffer had given the Firm numerous documents that the plaintiffs claimed were confidential. Some of these documents were identical to documents that the plaintiffs produced in discovery that had been marked "CONFIDENTIAL" or "CONFIDENTIAL,

_____

[1]The trial court dismissed the claim for the alleged violation of Florida's Civil Remedies for Criminal Practices Act.

ATTORNEYS' EYES ONLY." The documents received by the Firm from Dr. Lauffer—even if they might be identical to the documents produced in discovery—bore no such designations. The question of whether these documents were subject to the confidentiality orders soon came to a head.

On March 8, 2013, Physicians Group filed an emergency motion for an injunction to prohibit Dr. Lauffer and his agents from further dissemination of the documents that Dr. Lauffer had given to the Firm. In the motion, Physicians Group alleged that the Firm in general and Ms. DiFiore in particular were attempting to disseminate the documents by attaching them as exhibits to depositions in unrelated litigation. The plaintiffs feared that once identified and attached to the depositions, the documents would pass into the public domain and lose their confidential status. On March 20, 2013,[2] after a hearing, the trial court entered an order (the injunction order) providing in pertinent part, as follows:

> 2. Effective the date this Order is rendered, Dr. Lauffer and his agents, specifically including the Haas, Lewis, DiFiore, P.A. law firm and its attorneys, shall not utilize, produce, file, disclose, communicate, or divulge in any manner, either directly or indirectly, any document or information Dr. Lauffer provided to the Haas, Lewis, DiFiore, P.A. firm that Dr. Lauffer took from Physicians Group, or that Dr. Lauffer received from others while such individuals were employees of Physicians Group, that are or could be considered confidential, proprietary, trade secret, or contain personal medical information of patients treated by Physicians Group.

In its order, the trial court also provided that "pending further [o]rder of the [c]ourt, all such documents and information referenced in paragraph 2 shall be deemed

---

[2]The order was filed on March 22, 2013.

confidential in this litigation pursuant to the Court's Confidentiality Order."  Therefore, the injunction order made documents that the Firm had received independently from Dr. Lauffer subject to the trial court's confidentiality orders.[3]

As the litigation in the trial court progressed, the plaintiffs and Dr. Lauffer had a substantial dispute about documents requested by the plaintiffs and withheld by Dr. Lauffer.  Dr. Lauffer asserted the attorney-client privilege as a basis for withholding the documents.  At a hearing held on March 6, 2013, the trial court directed Dr. Lauffer to prepare a privilege log regarding the documents that he had withheld based on a claim of attorney-client privilege.[4]  Mr. Haas assumed the primary responsibility for preparing the privilege log.  He filed it with the court on March 20, 2013.

In August 2013, the Firm moved to withdraw from the litigation in the trial court as counsel for Dr. Lauffer.  In a hearing held on September 6, 2013, the trial court granted the Firm's motion to withdraw.  At the hearing, the trial court orally instructed Mr. Haas as follows: "Everything that you're holding that's confidential will go back to [plaintiff's counsel]."  The written order authorizing the Firm to withdraw did not address the issue of the disposition of confidential documents.  However, the trial court subsequently entered an order on November 25, 2013 (the return order),[5] that did address the issue of the return of confidential documents as follows:

> During the hearing on September 6, the Court directed that
> the Haas, Lewis, DiFior[e], P.A. law firm send to [one of the

---

[3]As discussed later, Dr. Lauffer took an appeal from the injunction order to this court in case number 2D13-1893.  The Firm represented Dr. Lauffer in the appeal.

[4]The trial court signed its written order on March 18, 2013, and the order was filed on March 25, 2013.

[5]The order was filed on November 27, 2013.

attorneys in the firm representing the] Plaintiffs, all documents subject to the Court's confidentiality orders, that is, those documents that were produced to the Haas, Lewis, DiFior[e], P.A. in this lawsuit that were marked as either Confidential or Attorneys Eyes Only. The Court now reduces its previous directive to writing and is providing a copy to Mr. Haas and the other attorneys from the Haas, Lewis, DiFior[e], P.A. who appeared on filings on behalf of Dr. Lauffer.

It is therefore ORDERED and ADJUDGED:

1. Within five (5) working days from the date of this Order, the Haas, Lewis, DiFior[e], P.A. law firm and each of the attorneys who appeared on any filing in this lawsuit on behalf of Dr. Lauffer shall deliver all documents (regardless if in electronic form or paper form) it received in this lawsuit that bear a Confidential notation or Attorneys Eyes Only notation to [one of the attorneys in the firm representing the plaintiffs at the firm's address in Sarasota].

The return order also required each attorney returning any confidential documents to provide an affidavit to one of the attorneys representing the plaintiffs, swearing or affirming that all confidential documents had been delivered and that the Firm and the attorney making the delivery were not retaining any such documents.

In accordance with the trial court's order, members of the Firm returned to plaintiffs' counsel the documents produced in discovery that had been marked "CONFIDENTIAL" and "CONFIDENTIAL, ATTORNEYS' EYES ONLY." The members of the Firm and associates who had been involved in the case also provided the required affidavits relative to the return of the documents. This process was completed in December 2013. The Firm did not turn over the documents received directly from Dr. Lauffer that did not bear the critical designations.

Although the Firm had been allowed to withdraw from further representation of Dr. Lauffer in the trial court, it nevertheless continued to represent Dr.

Lauffer in this court on his appeal of the March 20, 2013, injunction order. The appeal would necessarily address the propriety of the injunction order that prohibited Dr. Lauffer and his agents from disclosing or disseminating the documents that Dr. Lauffer had provided directly to the Firm. Thus Ms. DiFiore and the Firm intended to use at least some, if not all, of the documents received directly from Dr. Lauffer as part of its appendix to be filed in connection with the pending appeal. Plaintiffs' counsel was defending the appeal. Counsel undoubtedly anticipated that the Firm would include some or all of these documents in its appendix.

On December 3, 2013, plaintiffs' counsel wrote a letter to the Firm inquiring about some documents that had not been returned. Mr. Haas and Ms. DiFiore responded by letter the next day explaining why the documents in question had not been returned. In the letter, they also said:

> If you have something to show that these documents fall within the scope of the Court's order, please provide that at your earliest convenience so that we can be compliant. In addition, we request that you confirm we have otherwise provided all other documents within the scope of the Order [requiring the return of documents]. In the absence of anything to indicate otherwise, we have a good faith belief that we have fully complied with the Court's order. However, we strive to be fully compliant and will consider anything you can provide to assist us in that regard. Thank you for your attention to these requests.

Plaintiffs' counsel did not reply to this letter and did not otherwise inform the Firm that it was not fully compliant with the return order.

This court disposed of Dr. Lauffer's appeal with a per curiam affirmance of the injunction order on March 21, 2014. At that point, one might have concluded that

the Firm's involvement with the plaintiffs' litigation against Dr. Lauffer had come to an end. However, such a conclusion would have been wrong.

On June 4, 2014, Physicians Group filed a petition and motion to have Mr. Haas, Ms. DiFiore, and the Firm held in indirect criminal contempt of court for violating at least four court orders previously entered in the course of the litigation. The basis for the alleged contempt related to the Firm's filing of confidential documents in an unsealed appendix in this court in the appeal of the injunction order ("Count One") and the Firm's failing to return confidential documents ("Count Two"). On September 26, 2014, Physicians Group filed its first amended petition and motion seeking to have Mr. Haas, Ms. DiFiore, and the Firm held in indirect criminal contempt. The amended petition and motion asserted an additional violation regarding the omission of certain documents from the privilege log prepared and served in March 2013 by Mr. Haas ("Count Three"). Upon the filing of these petitions and motions, the trial court issued orders to show cause in accordance with Florida Rule of Criminal Procedure 3.840, directing Mr. Haas, Ms. DiFiore, and the Firm to show cause why they should not be held in indirect criminal contempt for the alleged violations.

The trial court did not enter a written order appointing counsel for Physicians Group to present the case for indirect criminal contempt against Mr. Haas, Ms. DiFiore, and the Firm. Nevertheless, counsel for Physicians Group actively prosecuted the charges that it had initiated against the three defendants. The trial court devoted three days to hearing the charges: one day in October 2014 on Count One and two days in December on Counts Two and Three.

On December 23, 2014, the trial court entered a detailed, twenty-three-page final judgment reciting its findings of fact and conclusions of law.[6]  On Count One, the trial court found Mr. Haas not guilty, Ms. DiFiore guilty, and the Firm guilty.  On Count Two, the trial court found all three defendants guilty.  On Count Three, the trial court found Mr. Haas guilty, Ms. DiFiore not guilty, and the Firm guilty.  Although the trial court denied the defendants' renewed motion for a judgment of acquittal or in the alternative, a new trial, the trial court ultimately vacated the findings of guilt against the Firm.

Before sentencing, the defendants filed a motion seeking to disqualify counsel for Physicians Group from acting as the prosecuting attorney at the sentencing hearing.  The trial court denied this motion.  Counsel for Physicians Group filed a twenty-page sentencing memorandum with additional exhibits.  Counsel for Physicians Group requested that Mr. Haas and Ms. DiFiore be incarcerated for several consecutive weekends in the county jail, that they each be fined $500 for the two counts on which they had been found guilty, and that they be ordered to perform community service.  Counsel for Physicians Group also requested that Mr. Haas and Ms. DiFiore be required to reimburse Physicians Group $119,543 for attorney's fees and $5786.97 in costs for prosecuting the criminal contempt proceeding.  Finally, counsel for Physicians Group sought reimbursement for additional fees of $5571.30 allegedly incurred in connection with having the appendix sealed in the appeal of the injunction order and $14,225.21 for an investigation into the privilege log issue.

---

[6]The final judgment was filed on December 29, 2014.

The trial court withheld adjudication of guilt for both Mr. Haas and Ms. DiFiore and did not require them to serve any time in jail. The trial court sentenced each of them to pay fines totaling $1000, i.e., $500 for each offense on which they had been found guilty, plus costs of $50. In addition, the trial court placed each of them on a non-reporting, non-paying probation for six months and required each of them to perform community service as a condition of their probation. The trial court declined to order Mr. Haas and Ms. DiFiore to reimburse Physicians Group for the attorney's fees and costs it had incurred in prosecuting the motion for contempt. The trial court concluded that it had no legal authority to reimburse Physicians Group for such expenses.[7] Mr. Haas and Ms. DiFiore appealed the findings of guilt and their sentences. This court has consolidated the two cases for the purpose of issuing this opinion.

On appeal, Mr. Haas challenges the trial court's findings that he was guilty of indirect criminal contempt of court with regard to the conduct charged in Counts Two and Three. Similarly, Ms. DiFiore challenges the trial court's findings with regard to Counts One and Two. Both Mr. Haas and Ms. DiFiore also argue that the final judgment and orders of probation, as amended, should be reversed because the trial court committed fundamental error in permitting counsel for Physicians Group to "prosecute" the criminal contempt charges. Based on our disposition of this case, we need not address the latter argument.

---

[7]Physicians Group appealed the trial court's refusal to award its attorney's fees and court costs it had incurred in prosecuting the contempt proceedings. Physicians Group's appeal in the case against Mr. Haas is case number 2D15-1127; the appeal in the case against Ms. DiFiore is case number 2D15-1129.

## II. THE APPLICABLE LAW AND THE STANDARD OF REVIEW

Contempt is "[a]n act which is *calculated* to embarrass, hinder, or obstruct a court in the administration of justice, or which is *calculated* to lessen its authority or dignity." Garcia v. Pinellas Cty., 483 So. 2d 443, 444 (Fla. 2d DCA 1986) (quoting Thomson v. State, 398 So. 2d 514, 517 (Fla. 2d DCA 1981)).  A court employs its power of criminal contempt "to vindicate the authority of the court or to punish for an intentional violation of an order of the court." Parisi v. Broward Cty., 769 So. 2d 359, 364 (Fla. 2000) (quoting Bowen v. Bowen, 471 So. 2d 1274, 1277 (Fla. 1985)).  Accordingly, when an alleged criminal contempt is based upon the violation of a court order, the contemnor's intent to violate the order is a necessary element of the offense.  Id.; see also Roberts v. Bonati, 133 So. 3d 1212, 1216 (Fla. 2d DCA 2014).  "Intent, absent a statement thereof or an admission by the accused . . . must be inferred from the acts of the accused and the surrounding circumstances." Garcia, 483 So. 2d at 444-45 (alteration in original) (quoting Thomson, 398 So. 2d at 517).  To support a finding of contempt, an individual's intent to disobey the court's order must be proved beyond a reasonable doubt.  Smith v. State, 954 So. 2d 1191, 1194 (Fla. 3d DCA 2007); see also Parisi, 769 So. 2d at 364.

Moreover, "[f]or a person to be held in contempt of a court order, the language of the order must be clear and precise, *and* the behavior of the person must clearly violate the order." Reder v. Miller, 102 So. 3d 742, 743 (Fla. 2d DCA 2012) (quoting Paul v. Johnson, 604 So. 2d 883, 884 (Fla. 5th DCA 1992)).  A trial court cannot make a finding of contempt for violation of a court order based upon its intent in issuing the order when the court's "intent was not plainly expressed in the written order."

Id. (quoting Minda v. Ponce, 918 So. 2d 417, 421 (Fla. 2d DCA 2006)).  In other words, a finding of contempt for violating a court order cannot be based upon something the order does not say.  Id.; see also Menke v. Wendell, 188 So. 3d 869, 871 (Fla. 2d DCA 2015).

> We recognize that a judgment of contempt will not be overturned unless the trial court either abused its discretion or departed so substantially from the law that fundamental error occurred.  See DeMello[ v. Buckman], 914 So. 2d [1090,] 1093 [(Fla. 4th DCA 2005)].  However, a trial court's discretion is limited by rules, statutes, and case law, and a trial court abuses its discretion when its ruling is based on an erroneous view of the law.  See McDuffie v. State, 970 So. 2d 312, 326 (Fla. 2007).

Reder, 102 So. 3d at 744.  In addition, a judgment of contempt must be supported by competent, substantial evidence in the record.  See Pearson v. Pearson, 932 So. 2d 601, 602 (Fla. 2d DCA 2006); see also Smith, 954 So. 2d at 1194.

### III.  DISCUSSION

### A.  Count One: The Filing of the Appendix at this Court

The first amended order to show cause required Mr. Haas, Ms. DiFiore, and the Firm to show cause why they "should not be held in indirect criminal contempt of court for [their] willful violation of the court['s] orders by publically [sic] filing on or about December 23, 2013, Exhibits 10-13 of Dr. Lauffer's Initial Brief Appendix [in the appeal of the injunction order] at the Second District Court of Appeal."  The trial court found Ms. DiFiore and the Firm guilty on Count One.

The Firm filed the notice of appeal of the injunction order on April 22, 2013.  The Firm filed the initial brief in this court on July 17, 2013.  On the same day, the Firm filed a motion to seal portions of the appendix to be filed that contained

- 13 -

confidential documents. On July 24, 2013, this court entered an order denying without prejudice the motion to seal various exhibits in the anticipated appendix. From this point on, a misunderstanding within the Firm led directly to the events that followed.

The Firm's associate attorney who had filed the notice of appeal, the initial brief, and the unsuccessful motion to seal portions of the appendix believed that Ms. DiFiore had assumed responsibility for handling the appeal. Ms. DiFiore believed that the associate was still handling the appeal. As a result, no one acted promptly to file the appendix or an amended motion to seal portions of it. Physicians Group filed its answer brief on September 17, 2013, and its own appendix on the following day. Still, these filings did not prompt the Firm to take appropriate action with regard to filing and arranging for the sealing of portions of its appendix.

On December 13, 2013, this court entered an order directing Dr. Lauffer to file his appendix within ten days. The order also warned that a failure to file the appendix as directed could result in an affirmance of the trial court's order. Ms. DiFiore became aware of this court's order on Monday, December 23, 2013, the last day allowed by this court for the filing of the appendix. This court was scheduled to be closed on December 24 and 25 for the Christmas holiday. Now, facing an emergency regarding the appeal and various other tasks that demanded her attention before the end of the day, Ms. DiFiore decided that she needed to act to avoid this court's potential affirmance of the injunction order as a result of the missing appendix. On December 23, Ms. DiFiore filed with this court the appendix to the initial brief containing the confidential documents. The appendix was not sealed.

- 14 -

On the afternoon of December 23, an attorney for Physicians Group sent an e-mail to several persons at the Firm, including Ms. DiFiore. The attorney noted the filing of the appendix, stating that he had not received certain exhibits. The attorney also said: "I trust that, to the extent that Mr. Haas[8] is filing documents that are confidential/trade secret, etc. that your firm will appropriately file them and ensure that they are sealed." Early the next morning, Ms. DiFiore responded by e-mail as follows:

> I had a deadline to meet in regard to the appendix. So I made the decision to file it without being under seal, and save my appeal. Earlier the motion to file under seal was denied, pending a motion that addressed the various requirements of the rule. Apparently, no one addressed that order, so we had a bit of time crunch.
>
> Following the holiday, we will file a motion as requested by the court and get those portions of the appendix out of the public view. It was the best I could do in the time I had. There was no intent to disclose these records[.] It was simply a matter of timing.
>
> I am out on Thursday and Friday after Christmas. I will be back in the office on Monday[,] December 30. If [a Firm associate] is in the office over those days, he can get the motion filed, but otherwise, I will take care of it on Monday and Tuesday.
>
> If you'd like to hear about the other pressing matters that consumed my time and prevented me from getting that motion filed last week or yesterday, give me a call.
>
> Otherwise, I hope [that] you have a Merry Christmas and enjoy some time with your family.
>
> *Thanks, Dotti*

---

[8]Mr. Haas was out of the office for medical reasons during this period. He had no involvement with the filing of the appendix.

This court was closed on December 24 and 25, 2013. The court re-opened for business on Thursday, December 26, and it was also open on Friday, December 27. None of the materials contained in the appendix filed by Ms. DiFiore were available to be viewed electronically over the Internet during this period. However, on December 26 and 27, the materials were available to be viewed by members of the public in the clerk's office at this court's headquarters in Lakeland. Early on the morning of Friday, December 27, counsel for Physicians Group filed an emergency motion to seal Dr. Lauffer's appendix. On Monday, December 30, this court entered an order temporarily granting the emergency motion to seal the appendix. On January 10, 2014, after receiving a response from the Firm, this court entered an order sealing Sections 10, 11, 12, and 13 of the appendix containing confidential documents. On March 21, 2014, this court affirmed the trial court's injunction order.

Physicians Group's theory on Count One was that Ms. DiFiore filed the appendix containing confidential documents without arranging to have them sealed as part of her "campaign" to disseminate the documents in violation of the court's confidentiality orders by inserting the documents into the public record. The facts do not support this theory for several reasons. Moreover, although the record supports the trial court's finding "that [Ms.] DiFiore intentionally and deliberately filed confidential documents" with this court without their being under seal, the trial court did not specifically find, and the record does not support, that she did so with the intent to violate the trial court's confidentiality orders.

First, as noted previously, the Firm had attempted to file the appendix and to arrange for the sealing of the confidential documents in July 2013. This court denied

the motion to seal without prejudice.  The Firm's earlier attempt to file the appendix and to seal the confidential documents—albeit unsuccessful—is inconsistent with the notion that Ms. DiFiore or other attorneys in the Firm had an intent to violate the trial court's orders by disseminating confidential documents or by failing to comply with the requirement that the documents be filed under seal.

Second, Ms. DiFiore's assistant testified at the hearing that on December 23, 2013, Ms. DiFiore was in a "panic" upon learning of the looming deadline to file the appendix, and that she acted out of a concern to avoid the possible affirmance of the appeal on account of the inadequacy of the record.  Of course, the emergency that Ms. DiFiore confronted was substantially one of her own making.  One might also criticize Ms. DiFiore for failing to explore alternative courses of action.  For example, she could have contacted counsel for Physicians Group and requested a stipulation to an extension of time for filing the appendix and obtaining the sealing of the confidential documents before they were filed with this court.  Ms. DiFiore could also have filed a motion with this court requesting an extension of the deadline for the filing of the appendix.  In fact, Ms. DiFiore acted without trying either of these alternatives.  However, considering that five months had elapsed since the entry of this court's order to file the appendix and that any request for an extension would necessarily be made on the last day set for the filing of the appendix, Ms. DiFiore could have reasonably concluded that a request for a further extension was not likely to receive a positive response from either counsel for Physicians Group or from this court.

Furthermore, as an experienced appellate attorney, Ms. DiFiore undoubtedly expected that her failure to timely file the appendix might have resulted in

an affirmance of the trial court's order based on the insufficiency of the record to show error. See Applegate v. Barnett Bank of Tallahassee, 377 So. 2d 1150, 1152 (Fla. 1979); Metzler v. Metzler, 779 So. 2d 412, 412 (Fla. 2d DCA 2000). An affirmance on those grounds could have resulted in a variety of adverse consequences, including a malpractice claim against Ms. DiFiore and the Firm. See, e.g., Fine & Block v. Evans, 411 S.E.2d 73, 73 (Ga. Ct. App. 1991) (addressing "a legal malpractice case predicated upon the defendant attorneys' negligence on the appellate level, specifically an unexcused delay in obtaining the filing of a transcript which resulted in the dismissal of their client's appeal from an adverse result in the trial court"). Accordingly, the pressures on Ms. DiFiore to act quickly to "save [her] appeal" were substantial.

Third, the evidence failed to establish that Ms. DiFiore acted for any reasons other than those outlined in her contemporaneous e-mail addressed to counsel for Physicians Group: (1) she acted to avoid the dismissal of Dr. Lauffer's appeal, not to violate the trial court's orders; (2) she intended to seek the sealing of the confidential documents as soon as it was possible to do so; and (3) she did not believe that filing the appendix would expose the confidential documents to public view and this was not her intent.

Finally, we note that Physicians Group did not establish that any dissemination of the documents to members of the public occurred as a result of the two-day period during which the documents were unsealed and available at the office of the clerk of this court in Lakeland. We certainly do not approve a "no harm, no foul" approach to the imposition of sanctions for the violation of court orders. Nevertheless, the undeniable fact that the confidentiality of the documents was preserved bolsters Ms.

- 18 -

DiFiore's claim that her actions were not calculated to violate the court's orders by disseminating the documents to the public at large.

Upon a thorough review of the record, we find no competent, substantial evidence to establish beyond a reasonable doubt that Ms. DiFiore had the intent to disobey the trial court's orders when she filed the Appendix in this court. See Parisi, 769 So. 2d at 364. Although the trial court found "that [Ms.] DiFiore [had] intentionally and deliberately filed confidential documents with the Second District Court of Appeal[ ] without following the necessary procedures to ensure that the documents were filed under seal," it did not reject Ms. DiFiore's testimony or the evidence that it had been the Firm's and Ms. DiFiore's intent to file the documents under seal all along or that she intended to obtain the sealing of the documents in compliance with the trial court's orders as soon as possible. Because there was no proof beyond a reasonable doubt that Ms. DiFiore's actions were "calculated to embarrass, hinder, or obstruct" the trial court's administration of justice, or that she intended to disobey a court order, the trial court erred when it found her guilty of indirect criminal contempt on Count One. See Garcia, 483 So. 2d at 444-45.

**B. Count Two: The Retention of Confidential Documents**

The first amended order to show cause required Mr. Haas, Ms. DiFiore, and the Firm to show cause why they should not be held in indirect criminal contempt of court "for having . . . documents [deemed to be confidential] in their possession on December 23, 2013." Thus the trial court set December 23, 2013, as the critical date for the determination of whether Mr. Haas, Ms. DiFiore, or the Firm had violated the return order by retaining confidential documents. Of course, as noted in our discussion of

Count One, December 23, 2013, was the date that Ms. DiFiore had filed the unsealed appendix containing confidential documents in conjunction with the appeal of the injunction order that was then pending in this court. The trial court found Mr. Haas, Ms. DiFiore, and the Firm guilty on Count Two. An examination of the order allegedly violated will demonstrate that counsel for Physicians Group failed to establish any violation of the return order on that date.

On November 25, 2013, approximately two months after the Firm had been allowed to withdraw from further representation of Dr. Lauffer in the underlying proceedings, the trial court entered the return order. As the material quoted from the return order in section I of this opinion reflects, the order was quite specific about what documents were required to be returned. The documents to be returned were those that the Firm or its attorneys had "received in this lawsuit that bear a Confidential notation or Attorneys Eyes Only notation." The return order did not direct the return of the documents that the Firm and its members had received directly from Dr. Lauffer that were not marked with the critical designations, even though those documents had previously been determined to be confidential in the injunction order.

It was undisputed that Mr. Haas, Ms. DiFiore, and the Firm had complied with the return order by returning to counsel for Physicians Group all of the documents that had been received in discovery and marked "CONFIDENTIAL" or "CONFIDENTIAL, ATTORNEYS' EYES ONLY." Instead, the trial court found Mr. Haas and Ms. DiFiore in indirect criminal contempt because they were in possession of confidential documents received from Dr. Lauffer that Ms. DiFiore filed with this court in the unsealed appendix on December 23, 2013. But the documents that the Firm and its

members had in their possession on that date had not been received in discovery and did not bear the critical designations. The documents in the possession of the Firm and its members on that date were the unmarked documents that had been received directly from Dr. Lauffer, the Firm's client. Accordingly, Mr. Haas, Ms. DiFiore, and the Firm took the position that their retention of those unmarked documents did not violate the very specific language of the return order.

In the final judgment, the trial court addressed the problem of the critical difference between the specific language of the directive contained in the return order and the evidence with regard to the charge alleged in Count Two as follows:

> At trial, Haas and DiFiore testified that they did not believe that retention of the "copies" of the confidential documents violated this Court's November 25, 2013 Order, because those documents did not "bear a Confidential notation or Attorneys Eyes Only notation." The Court rejects this contention, and finds this interpretation of the Court's November 25, 2013 Order requiring the Firm to return all documents subject to the Court's Confidentiality Order unreasonable. Such an interpretation would clearly eviscerate <u>the spirit and purpose</u> of the Court's Order, and lead to an absurd result. Therefore, the Court finds that retaining the documents on this basis constitutes a flagrant violation of this Court's Order entered on November 25, 2013.
>
> For the foregoing reasons, the Court finds that it is clear from the evidence that Haas, DiFiore, and the Firm, retained possession of documents classified as **"CONFIDENTIAL"** or **"CONFIDENTIAL, ATTORNEYS' EYES ONLY"** as of December 23, 2013, in violation of this Court's Order Directing the Haas, Lewis, and DiFiore, P.A. Law Firm to Return All Documents Subject to the Court's Confidentiality Order.

(Emphasis added.)  Thus the trial court found Mr. Haas and Ms. DiFiore guilty of indirect criminal contempt on Count Two based on a finding that they had violated not the letter of the November 25, 2013, order, but rather its "spirit and purpose."

The trial court erred in finding Mr. Haas and Ms. DiFiore in indirect criminal contempt for behavior that did not clearly violate the order.  See Reder, 102 So. 3d at 743; see also Smith v. State, 954 So. 2d 1191, 1194 (Fla. 3d DCA 2007) ("When a finding of contempt is based upon a violation of a court order, that order must be one which clearly and definitely makes the person aware of its command.").  This court recently addressed the issue of holding a party in contempt for conduct that did not violate the clear terms of the order at issue as follows:

> "It is well established that a party cannot be sanctioned for contempt for violating a court directive or order which is not clear and definite as to how a party is to comply with the court's command." Ross Dress for Less, Va., Inc. v. Castro, 134 So. 3d 511, 523 (Fla. 3d DCA 2014); see Keitel v. Keitel, 716 So. 2d 842, 844 (Fla. 4th DCA 1998) ("[W]hen a final judgment or order is not sufficiently explicit or precise to put the party on notice of what the party may or may not do, it cannot support a conclusion that the party willfully or wantonly violated that order."). "Courts should be explicit and precise in their commands and should only then be strict in exacting compliance." Lawrence v. Lawrence, 384 So. 2d 279, 280 (Fla. 4th DCA 1980).
>
> In Reder v. Miller, 102 So. 3d 742 (Fla. 2d DCA 2012), this court reversed an order of contempt where the appellant's actions did not violate the clear terms of an order entered by the court, and the trial court's finding of contempt was based on the trial court's intent rather than the plain language of the orders.  In reversing and remanding to vacate the order of contempt, this court stated: "While Reder's acts may have violated the 'spirit' or 'intent' of the trial court's orders, a finding of contempt requires the violation of *the letter of an order*—not its spirit." Id. at 744 (emphasis added); see also Wilcoxon v. Moller, 132 So. 3d 281, 287 (Fla. 4th DCA 2014) ("A court cannot base

- 22 -

> contempt upon noncompliance with something an order
> does not say, and we will not read implications into an order
> to justify contempt.").

Menke, 188 So. 3d at 871-72.  In the case before us, the trial court found Mr. Haas and Ms. DiFiore in indirect criminal contempt based on conduct that concededly did not violate the letter of the order directing the return of confidential documents.  Accordingly, the trial court's findings that Mr. Haas and Ms. DiFiore were in indirect criminal contempt for the conduct charged in Count Two based upon alleged violations of "the spirit and purpose" of the order were in error.  See id.

The parties' contemporaneous communications and course of dealings add additional support for the conclusion that the trial court's command was not sufficiently clear to support a finding that Mr. Haas and Ms. DiFiore had violated the order for the return of documents.  Initially, we note that Dr. Lauffer and the Firm possessed documents originating with the 1-800-ASK-GARY enterprises that they had obtained before the litigation began.  Obviously, these documents did not bear the critical designations "CONFIDENTIAL" or "CONFIDENTIAL, ATTORNEYS' EYES ONLY."  The gravamen of the plaintiffs' claims against Dr. Lauffer was that he had retained patient records and trade secret and proprietary materials allegedly "stolen" from Physicians Group.  In the injunction order that was entered on March 20, 2013, the trial court specifically noted this fact, finding that Dr. Lauffer had "provided [such] documents to the Haas, Lewis, DiFior[e], P.A. law firm ("Firm"), the firm presently representing Dr. Lauffer in this cause of action."  The trial court's injunction order expressly limited the use of such materials by Dr. Lauffer and the Firm.  Thus everyone knew that Dr. Lauffer and the Firm possessed copies of documents deemed to be

confidential that did not bear the critical designations, "CONFIDENTIAL" and "CONFIDENTIAL, ATTORNEYS' EYES ONLY."  After all, that was the crux of the civil lawsuit filed by the plaintiffs.

After the Firm had returned documents to counsel for Physicians Group in response to the trial court's order of November 25, 2013, Mr. Haas and Ms. DiFiore wrote a letter to counsel for Physicians Group on December 4, 2013.  In this letter, Mr. Haas and Ms. DiFiore explained that certain documents that were not labeled "Confidential/Attorney's Eyes Only" had not been included with the other documents that had been returned and that they had a good faith belief that they had fully complied with the return order.  They also wrote to counsel for Physicians Group asking them to advise if counsel believed that the retained documents fell within the scope of the return order, stating that they "strive[d] to be fully compliant and [would] consider anything [counsel could] provide to assist them in that regard."  There was no response to the Firm's letter.

Moreover, on November 22, 2013, Mr. Haas wrote a letter to the circuit judge assigned to this case, stating: "Because [the Firm] continue[s] to represent Dr. Lauffer in the appeals [sic] involving the confidential documents and confidential designations we remain entitled to retain those documents as his counsel."  A copy of this letter was sent to all counsel of record.  Neither the trial judge nor counsel for Physicians Group made a response objecting to the Firm's retention of the confidential documents as announced in the letter.  Yet counsel for Physicians Group successfully argued for a finding that Mr. Haas and Ms. DiFiore were in indirect criminal contempt of

court for their mere possession of those documents on December 23, 2013, only one month after the date of Mr. Haas's letter.

After Ms. DiFiore filed the appendix containing the confidential documents in this court in conjunction with the pending appeal of the injunction order, counsel for Physicians Group responded by moving to have this court seal the appendix. Understandably, counsel for Physicians Group asserted that Ms. DiFiore and the Firm were attempting to disseminate documents deemed confidential by inserting them into the public record. Nevertheless, counsel for Physicians Group made no effort at that time to seek the issuance of an order to show cause based on an alleged violation of the November 25, 2013, order for the return of documents. On the contrary, the first time that counsel for Physicians Group claimed that Mr. Haas and Ms. DiFiore had violated the November 25, 2013, order for the return of documents was when they filed their petition and motion for order to show cause on June 4, 2014. This was over five months after the filing of the unsealed appendix and the response by Physicians Group seeking to have the appendix sealed.

In summary, both the trial court and counsel for Physicians Group knew that the Firm had retained certain documents deemed to be confidential after the entry of the return order. The failure of either the trial court or counsel for Physicians Group for over five months to seek any redress for what was later claimed to be a "flagrant" violation of the trial court's order can only lead to two conclusions, either of which is sufficient to exonerate Mr. Haas and Ms. DiFiore of the conduct charged in Count Two. First, no one regarded the Firm's retention of the documents as a violation of the trial court's order when it was entered and when events occurring in the following month

- 25 -

established beyond any doubt that the Firm was in possession of such documents. The belated claims of a "flagrant" violation represented a bit of revisionist history intended only to supply additional ammunition for the effort to punish Mr. Haas, Ms. DiFiore, and the Firm. Second, the order itself was so unclear and ambiguous in its command that it is insufficient as a basis for a finding of indirect criminal contempt. See Menke, 188 So. 3d at 871; Reder, 102 So. 3d at 743. Whichever alternative one chooses, one thing is clear: the findings of guilt on Count Two cannot stand.

### C. Count Three: Omission of Withheld Documents from the Privilege Log

The first amended order to show cause required Mr. Haas and the Firm "to show cause why they should not be held in indirect criminal contempt of court for their willful violation of the Order requiring the identification on a privilege log of each document withheld on the basis of privilege."[9] After a hearing, the trial court found both Mr. Haas and the Firm guilty on this count. As noted previously, the trial court subsequently vacated the finding of guilt against the Firm.

Mr. Haas assumed primary responsibility for the preparation of the privilege log. On March 7, 2013, Mr. Haas sent a letter to the WSV firm, the law firm that was representing the attorney defendant in the case. In the letter, Mr. Haas asked the WSV firm to have their client "send to me, electronically or otherwise, all communications between himself and Dr. Lauffer, both hard copy and electronically, so

---

[9]The First Amended Order to Show Cause does not direct this count to Ms. DiFiore, but the final judgment states that it did. After initially mentioning that Count Three was directed against Ms. DiFiore, the final judgment does not mention her again in making factual findings on this count. Then, in the "ruling" section, the final judgment finds Ms. DiFiore "NOT GUILTY" on Count Three. The parties have not explained the reason for this discrepancy in their briefs, and we cannot otherwise account for it.

that we can prepare a privilege log regarding same in accordance with the Court's directions." On March 13, 2013, Mr. Haas received a packet of documents directly from Dr. Lauffer for inclusion on the privilege log. Mr. Haas sent Dr. Lauffer a draft of the privilege log for his review on March 19, 2013. On the same day, the WSV firm responded to Mr. Haas's request and sent by an e-mail with an attachment containing "all e-mail correspondence between Dr. Lauffer and our client, [the attorney defendant], from September 10, 2010 – August 15, 2012."

Mr. Haas was out of the office when the e-mail was received, but he read it on his mobile telephone. Mr. Haas was unable to open the attachment, but his office assistant also read the e-mail, opened the attachment, and printed the documents. The assistant placed the printed version of the documents in an area designated in the Firm's Tampa office for items that were to be reviewed by Mr. Haas. When Mr. Haas served the privilege log on the following day, March 20, he did not include the documents contained in the e-mail on the privilege log. There was some overlap between the documents in the privilege log as prepared and served by Mr. Haas. Nevertheless, a substantial number of the documents contained in the attachment to the e-mail sent by the WSV firm did not appear on the privilege log filed on behalf of Dr. Lauffer by the Firm.

The Firm had withdrawn from further representation of Dr. Lauffer in the trial court on September 23, 2013. Thereafter, Dr. Lauffer was without representation in the trial court litigation. In June 2014, Dr. Lauffer waived his attorney-client privilege

with the Firm.[10] After Dr. Lauffer waived the privilege, counsel for Physicians Group issued a nonparty subpoena duces tecum to the Firm for the production of documents. The subpoena duces tecum was issued on July 20, 2014. In response to the subpoena, the Firm produced seventeen boxes of documents. Included in the documents produced was the e-mail from the WSV firm with the attachment that had apparently escaped Mr. Haas's attention. After a detailed review of the e-mails and documents received in response to the subpoena against the privilege log, counsel for Physicians Group amended its motion for order to show cause to include Count Three regarding the omission of a substantial number of documents withheld as privileged from the privilege log.

At the hearing, Mr. Haas testified that he had no recollection of seeing the printed version of the e-mail with attachments received from the WSV firm in response to his request. He also asserted that he did not intentionally fail to include the documents in the privilege log that he completed and filed at or about the same time as the receipt of the e-mail. Although it was undisputed that the e-mail was received and the attachments opened and printed by Mr. Haas's assistant, Physicians Group was unable to prove beyond a reasonable doubt that Mr. Haas actually saw the attachments to the e-mail and intentionally omitted them from the privilege log.

Upon a detailed review of the record, we conclude that Physicians Group failed to present competent, substantial evidence upon which one might conclude that Mr. Haas's failure to include the omitted documents in the privilege log resulted from

---

[10]The record on appeal does not disclose the extent of the waiver or the reasons underlying Dr. Lauffer's decision to waive the privilege.

anything other than an inadvertent oversight. To be sure, Physicians Group proved that Mr. Haas's conduct with regard to the preparation of the privilege log was sloppy and careless. But there is no evidence from which one could conclude beyond a reasonable doubt that Mr. Haas acted with the requisite intent to disobey the court's order. See Parisi, 769 So. 2d at 364.

Three factors bolster this conclusion. First, if Mr. Haas had intended to omit the communications between Dr. Lauffer and his former attorney from the privilege log, he had no reason to write to the WSV firm and to solicit a written response that included copies of the documents. Second, Physicians Group never established the existence of any benefit or advantage that might have accrued either to Dr. Lauffer or to the Firm by omitting the documents previously withheld under a claim of attorney-client privilege from the privilege log. The omission of the withheld documents otherwise discoverable from the privilege log was very likely to result in a waiver of the privilege. See Fla. R. Civ. P. 1.280(b)(6); Morton Plant Hosp. Ass'n v. Shahbas ex rel. Shahbas, 960 So. 2d 820, 826 (Fla. 2d DCA 2007); Gen. Motors Corp. v. McGee, 837 So. 2d 1010, 1032-33 (Fla. 4th DCA 2002). But Mr. Haas and the Firm had sought to preserve the privilege, not to waive it. Third, if Mr. Haas had intentionally omitted the documents from the privilege log, there was no reason for the Firm to include the e-mail with the attachments received from the WSV firm along with the other documents produced in response to the nonparty subpoena. It was the Firm's response to the nonparty subpoena that alerted counsel for Physicians Group to the e-mail with attachments that formed the basis for Count Three. One would not have expected the Firm to produce

- 29 -

the tell-tale e-mail if the intent of Mr. Haas and other attorneys in the Firm had been to disobey the trial court's order.

## IV.  CONCLUSION

It is evident from the facts shown in the record that this case involved a disturbing series of events in the underlying action in the trial court and in the related proceedings.  However, a review of the facts outlined in this opinion should remind every member of the legal profession who reads it of the importance of making civility and professionalism an integral part of his or her daily life.  See Oath of Admission to The Florida Bar ("To opposing parties and their counsel, I pledge fairness, integrity, and civility, not only in court, but also in all written and oral communications."); Conferences of Circuit Judges and County Court Judges and Trial Lawyers Section of The Florida Bar, Guidelines for Professional Conduct, Preamble (2008) ("Coupled with [a lawyer's other] duties is a lawyer's duty of courtesy and cooperation with fellow professionals for the efficient administration of our system of justice and the respect of the public it serves."); see generally Code for Resolving Professionalism Complaints (setting forth standards for the professional conduct expected of lawyers in a variety of circumstances).

For the reasons outlined in this opinion, we reverse the final judgment and its findings of guilt of indirect criminal contempt against both Mr. Haas and Ms. DiFiore. We also reverse the orders of probation, as amended, and the sentences on all counts of indirect criminal contempt imposed on both Mr. Haas and Ms. DiFiore.  On remand, Mr. Haas and Ms. DiFiore shall be discharged.

Reversed and remanded for discharge.

KHOUZAM and BADALAMENTI, JJ., Concur.