# Third District Court of Appeal

## State of Florida

Opinion filed November 1, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D17-148 & 17-69
Lower Tribunal No. 10-11645
_____

**Sharon Atara Kane,**
Appellant,

vs.

**Lawrence R. Sanders,**
Appellee.

Appeals from non-final orders from the Circuit Court for Miami-Dade County, George A. Sarduy, Judge.

Law Office of Kenneth B. Schurr, P.A. and Kenneth B. Schurr; Buchbinder & Elegant, P.A., and Harris J. Buchbinder, for appellant.

Weiss & Kahn, P.A., and Owen Ellison Kahn, for appellee.

Before ROTHENBERG, C.J., and SALTER and LINDSEY, JJ.

SALTER, J.

These consolidated appeals in this high-conflict, post-judgment family case are brought by the mother and former wife, Dr. Kane, from an order holding her in civil contempt (Case No. 3D17-148) and an order on a series of motions (Case No. 3D17-69). For jurisdictional and other reasons, we first describe the procedural history and then separately analyze the two appellate cases. We dismiss the appeal in Case No. 3D17-69 for lack of jurisdiction. In Case No. 3D17-148, we reverse and vacate the order granting the former husband's motion and supplemental motion for contempt, sanctions, and attorney's fees and costs.

<u>Procedural History</u>

The former husband and appellee here, Dr. Sanders, petitioned in mid-2010 for the dissolution of the parties' six-year marriage. By March of 2011, he and Dr. Kane had entered into a mediated marital settlement agreement and parenting plan ("MSA"). The then-presiding family court judge approved and incorporated the MSA in a final judgment of dissolution of marriage only two weeks later. The parties' daughters were then two and five years of age.

Within about three years, however, various disputes arose regarding time with the children and interpretation of a "right of first refusal" clause (the "ROFR")[1] in the parenting plan. The disputes intensified following Dr. Kane's

_____

[1] The parenting plan ROFR provision stated: "To the extent the party entitled to access with the child is unable to enjoy access to the child for whatever reason, then the other parent shall be entitled to the right of first refusal to care for the child over any other third party." Importantly, the provision did not include any

2

remarriage. Under Dr. Sanders' interpretation of the ROFR, Dr. Kane could not leave the two girls in their home for 45 minutes to go to the grocery store without first offering to drive the children to Dr. Sanders' home to leave them with him (and offering to pick up the children to return them to her home). As father and former husband, Dr. Sanders also claimed that Dr. Kane violated the final judgment because she made a "major health decision" unilaterally when she changed the date their daughters were to go to the dentist.

Dr. Sanders moved for the appointment of a parenting coordinator, and Dr. Kane agreed to such an order. Several months later, Dr. Sanders filed a "Motion to Compel, for Contempt, Sanctions, Attorney's Fees and Costs," alleging: five occasions when he was deprived of his right of first refusal; Dr. Kane's alleged failure to pay for piano lessons, in violation of the MSA; her violation of "sleep-over" agreements and "healthy snacks" agreements established with the parenting coordinator; Dr. Kane's interference with Dr. Sanders' telephone contact with the two girls; and her "excessive physicality with and hitting of" the daughters.

When Dr. Sanders' motion was heard in December 2016, the breaches of the ROFR turned out to involve strained interpretations of that clause (leaving one or both of the children at home with child care for a matter of hours rather than a full

---

specifics regarding the amount of access time that would trigger the right, or regarding the responsibility as between the parties to pick up or drop off the children upon exercise of the ROFR.

3

day, and for reasons which were practical rather than violative of the parenting plan embodied in the MSA). The alleged violation of the "healthy snacks" agreement arranged by the parenting coordinator occurred when the children refused to accept carrots, hummus, and apples Dr. Sanders brought to school on days when Dr. Kane was the custodial parent. Dr. Sanders supplemented the motion for contempt with allegations that Dr. Kane was refusing to meet with him and their older daughter (by then ten years old) regarding her participation on a jump rope team, such that Dr. Sanders would not allow further participation in those activities.[2]

Given Dr. Sanders' concern about the children's contact with Dr. Kane's fiancé (who became Dr. Kane's husband), the parties mutually agreed that a licensed psychologist should conduct an investigation and provide a report. Each party met twice with the psychologist, but Dr. Sanders then advised the psychologist that her work was suspended. Dr. Kane filed a motion to appoint a guardian ad litem for the minor children, and the parenting coordinator filed a

---

[2]  This recitation of alleged violations of the MSA is illustrative rather than exhaustive. No written parenting plan can be so complete and unambiguous as to address every eventuality that occurs with developing children over a course of years. Good will and the best interests of the children are to be the lodestars for former spouses and parents when the parenting plan is incomplete or ambiguous. The trial court correctly noted that "common sense" should apply regarding the ROFR.

4

request for a status conference to ask the family court for psychotherapeutic evaluation and treatment for the two girls.

Dr. Kane scheduled the psychologist for a deposition, but Dr. Sanders moved for a protective order based on an assertion that the psychologist was appointed based on a settlement agreement that failed.

After hearing these motions and cross-motions, the court entered an order on one group of pending motions (Case No. 3D17-69) (denying Dr. Kane's motions for a guardian ad litem and an evaluation of the children, granting Dr. Sanders' motion for protective order regarding the deposition of the psychologist, and denying the parenting coordinator's request for a status conference). A month later, the court entered a more extensive order granting Dr. Sanders' motions to compel, for contempt, for sanctions,[3] and for attorney's fees, and denying Dr. Kane's motions for similar relief (Case No. 3D17-148). These appeals followed.

Analysis: Case No. 3D17-69 (Order on Pending Motions)

The order denying a group of pending motions, entered a month before the contempt order in Case No. 3D17-148, is a non-final order that is not subject to appeal. We lack jurisdiction and thus dismiss this case.

That portion of the order granting Dr. Sanders' post-judgment motion for a protective order as to the deposition of the psychologist could be treated as a

---

[3] The trial court did not impose specific sanctions against Dr. Kane other than the assessment of attorney's fees and costs.

5

petition for certiorari. See S.W. Fla. Paradise Prop., Inc. v. Segelke, 111 So. 3d 268 (Fla. 2d DCA 2013). On the record before us, however, we would dismiss such a petition because the court's ruling does not depart from the essential requirements of law, cause material injury throughout the remainder of the proceedings below, or effectively leave Dr. Sanders without an adequate remedy on appeal. Id. at 271 (quoting Segarra v. Segarra, 932 So. 2d 1159, 1160 (Fla. 3d DCA 2006)).

Analysis: Case No. 3D17-148 (Contempt)

The trial court has inherent authority to hold a party in contempt for intentionally failing to obey a court order. Rojo v. Rojo, 84 So. 3d 1259, 1261-62 (Fla. 3d DCA 2012). To hold a party in contempt, it must be found that the party acted intentionally to violate a court order. Fore v. State, 201 So. 3d 839 (Fla. 4th DCA 2016). Merely acting recklessly is insufficient to support a contempt. Id.

To support a contempt finding, the violated court order must also clearly and definitely make the party aware of the court's command. M.J. v. State, 202 So. 3d 112, 113 (Fla. 5th DCA 2016). The language of the order must be clear and precise. Kranis v. Kranis, 313 So. 2d 135 (Fla. 3d DCA 1975). A contempt cannot be based on behavior that the court order does not contain. Haas v. State, 196 So. 3d 515, 523 (Fla. 2d DCA 2016); Paul v. Johnson, 604 So. 2d 883 (Fla. 5th DCA 1992).

6

"It is well established that a party cannot be sanctioned for contempt for violating a court directive or order which is not clear and definite as to how a party is to comply with the court's command." Ross Dress for Less Virginia, Inc. v. Castro, 134 So. 3d 511, 523 (Fla. 3d DCA 2014) (quoting Northstar Inves. & Dev., Inc. v. Pobaco, Inc., 691 So. 2d 656, 566 (Fla. 5th DCA 1997)). When a trial court holds a party in contempt based on that party's failure to follow an order that does not "clearly and definitely" make the party aware of what the party must do, the standard of review is legal error. Rojo, 84 So. 3d at 1261.

To the extent that the finding of contempt in this case is based on the ROFR, it fails because of the ambiguous terms of both the provision and the conduct alleged to have violated it. Requiring Dr. Kane to notify Dr. Sanders, and (potentially) to transport and pick up the children if Dr. Sanders exercised his right, comports with common sense when Dr. Kane could not stay with the children for some meaningful period of time, but is absurd when invoked regarding her hour-long trip to the supermarket or for similar errands. The ROFR's failure to specify a minimum period of absence, and its reference to a parent's inability to enjoy access to the child "for whatever reason" during a time-sharing slot, are a recipe for differing interpretations, for interrupting the children's activities and focus by shuttling them hither and yon, and for fostering friction in post-dissolution parenting.

7

Here, as in <u>Miranda v. Miranda</u>, 566 So. 2d 16 (Fla. 4th DCA 1991), the challenged order fails to contain a "clear and definite command" sufficient to notify a party of his or her required conduct and is not enforceable via contempt. Dr. Kane's interpretation, that the ROFR is applicable to overnight absences, is at least as reasonable as Dr. Sanders' interpretation, that the ROFR also applies to short absences for any reason and any period during a day.

The other purported grounds for contempt are equally infirm. The charge that Dr. Kane denigrated Dr. Sanders in the presence of the minor children is based on a single instance after which it is undisputed that Dr. Kane apologized. Reckless action, as opposed to intentional misconduct, is insufficient to support a contempt. <u>Fore</u>, 201 So. 3d at 841. Dr. Kane's alleged interference with Dr. Sanders' Facetime calls with the children rests on a vague provision in the MSA as well. Dr. Kane's alleged interruption of such calls on a very limited number of occasions (when a child was upset or sick) does not violate any parenting plan provision. The MSA provisions on communications with children could easily have been drafted to require isolated and private Facetime communications between the children and the absent parent.

Dr. Sanders' claim that Dr. Kane could not enroll a daughter in Zumba classes (to take place during Dr. Kane's timesharing periods) fails because he admitted that the parties had previously agreed verbally that each could enroll the

8

children in after-school activities that took place during their respective timesharing intervals. Nor was Dr. Kane's refusal to meet face to face with Dr. Sanders violative of the MSA when she imposed the condition that the meeting take place with a third adult present, but outside the presence of the children. The parenting plan does not require that a child be present at any such meeting, nor does it forbid the presence of a third person.

<u>Conclusion</u>

In Case No. 3D17-69, we dismiss the appeal taken from the "Order on Pending Motions" of December 7, 2016, for lack of jurisdiction.

In Case No. 3D17-148, we reverse and vacate the order granting Dr. Sanders' motion and supplemental motion to compel, for contempt, for sanctions, and for attorney's fees and costs.

9